32 P.3d 158

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ronald W. STRICKLIN, Jr.,
Defendant–Appellant.**

**No. 26120.**

Court of Appeals of Idaho.

June 25, 2001.

Review Denied Sept. 24, 2001.

Radakovich Law Office, Lewiston, for appellant. Danny J. Radakovich argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

SCHWARTZMAN, Chief Judge.

Ronald W. Stricklin, Jr., was charged with and convicted of nine counts of grand theft from his employer, the Panhandler Pies restaurant. Stricklin appeals, challenging the jury instructions and the sufficiency of the evidence. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the evidence presented by the state, Stricklin stole several thousand dollars from Panhandler Pies while employed there as the general manager of the Lewiston restaurant. Stricklin was charged with nine counts of grand theft.

At trial, the state's evidence against Stricklin consisted of documents showing the sales, proceeds, and deposits on the dates of Stricklin's offenses and the testimony of Stricklin's assistant managers, Brad Brown and Craig Blohm, as well as Rex Williams, who was Stricklin's uncle and the owner of Panhandler Pies. Brown, Blohm, and Williams each testified that restaurant proceeds on the days Stricklin had allegedly stolen funds were significantly greater than the amount Stricklin deposited into the bank and that Stricklin had altered the ledger book entries on those dates. Stricklin testified that he had not stolen any of the funds. Rather, he had withheld the funds from the daily deposits and applied them to other days' sales in order to make it appear that he was meeting his daily cost goals in order to get monthly bonuses.

After a jury trial, Stricklin was found guilty of all nine counts of grand theft. The district court sentenced Stricklin to nine concurrent unified terms of five years, with two years fixed, with retained jurisdiction, followed by a period of probation. Stricklin appeals.

## II.

## JURY INSTRUCTIONS

### A. Standard Of Review

 The question of whether the jury was properly instructed is one of law over which this Court exercises free review. *State v. Bush,* 131 Idaho 22, 32, 951 P.2d 1249, 1259 (1997); *State v. Buckley,* 131 Idaho 179, 182, 953 P.2d 619, 622 (Ct.App.1997), *aff'd,* 131 Idaho 164, 953 P.2d 604 (1998). On appeal, jury instructions are viewed as a whole, not individually, to determine whether the jury was properly and adequately instructed on the applicable law. *State v. Row,* 131 Idaho 303, 310, 955 P.2d 1082, 1089 (1998); *State v. Rozajewski,* 130 Idaho 644, 646, 945 P.2d 1390, 1392 (Ct.App.1997). To be reversible error, an instruction must mislead the jury or misstate the law. *State v. Merwin,* 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998); *State v. Hanson,* 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997).

### B. The Offense Instruction

 Stricklin objects to jury instruction 10, the grand theft elements instruction. While acknowledging that the instruction is a correct statement of the elements of grand theft, Stricklin argues that the instruction combines all nine counts, thereby inviting the jury to compound and cumulate the evidence as to each count with evidence as to any or all of the other counts. We disagree. Prior to reading instruction 10 to the jury, the district court read the charge instruction, which identified and segregated each of the nine counts of grand theft. The court then informed the jury that each of the nine counts charged grand theft, but that each count differed by the date on which it occurred. The court informed the jury that: "Each count charges a separate and distinct offense. You must decide each count separately on the evidence and the law that applies to it, uninfluenced by your decision as to any other count charged." The court then read instruction 10, the grand theft elements instruction. Taken as a whole, we cannot say that instruction 10 in any way invited the jury to cumulate the evidence on one count with evidence on another count. Finally, we note that the verdict form correctly segregated each count.

Instruction 10 is an accurate statement of the law. Stricklin has failed to indicate how

this instruction denied him a fair trial. Accordingly, we find no error in the instruction.

## C. The Reasonable Doubt Instruction

■ Stricklin argues that the district court's reasonable doubt instruction (instruction 18) given to the jury was improper. We construe Stricklin's argument to be that the instruction failed to comply with the requirements of due process. The reasonable doubt instruction stated:

A defendant in a criminal action is presumed to be innocent unless the contrary is proved, and in case of a reasonable doubt whether the defendant's guilt is satisfactorily shown, the defendant is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving the defendant guilty beyond a reasonable doubt.

Reasonable doubt is defined as follows. It is not merely possible doubt, because everything related to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

The approved Idaho jury instruction on reasonable doubt, ICJI 103, provides:

A defendant in a criminal action is presumed to be innocent unless the contrary is proved, and in case of a reasonable doubt whether the defendant's guilt is satisfactorily shown, the defendant is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving the defendant guilty beyond a reasonable doubt.

Reasonable doubt is defined as follows. It is not merely possible doubt, because everything related to human affairs, *and depending on moral evidence,* is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the jurors in that condition that they cannot say they

feel an abiding conviction, *to a moral certainty,* of the truth of the charge.

(Emphasis added). *See, e.g., State v. Cotton,* 100 Idaho 573, 577, 602 P.2d 71, 75 (1979). According to Stricklin, the reasonable doubt instruction given was improper because the second paragraph omitted the "moral certainty" language contained in ICJI 103.

■ Where the trial court gives a reasonable doubt instruction other than the approved instruction, this Court's review focuses upon whether the instruction that was given to the jury misstated the law or was so confusing and argumentative as to mislead the jury. *State v. Rhoades,* 121 Idaho 63, 82, 822 P.2d 960, 979 (1991) (affirming Rhoades' conviction where the reasonable doubt instruction given was not that approved in *Cotton,* while reiterating that the only appropriate reasonable doubt instruction is the California jury instruction adopted in *Cotton* ). The United States Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 1242–43, 127 L.Ed.2d 583, 590 (1994). "The Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury.' " 511 U.S. at 5, 114 S.Ct. at 1242–43, 127 L.Ed.2d at 590 (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166–67 (1954)).

With the "to a moral certainty" language inserted, the reasonable doubt instruction would have been identical to the California reasonable doubt jury instruction specifically approved by the Idaho Supreme Court. *State v. Hairston,* 133 Idaho 496, 513–14, 988 P.2d 1170, 1187–88 (1999); *Cotton,* 100 Idaho at 576, 602 P.2d at 74. We note that the California reasonable doubt instruction has recently been modified to omit the "to a moral certainty" language. *See* CALJIC No. 2.90 (6th ed., 1996).[1] We also note that the

---

**1.** In *People v. Hearon,* 72 Cal.App.4th 1285, 85 Cal.Rptr.2d 424 (1999), the court reiterated that

the current definition of reasonable doubt, as now set forth in CALJIC No. 2.90, has been

Idaho Criminal Jury Instruction Committee has proposed a revision to the reasonable doubt instruction similarly omitting the "moral certainty" language. ICJI 103A.

In *Victor*, the United States Supreme Court held that an instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, would correctly state the government's burden of proof, noting that the definitions of reasonable doubt most widely used in the federal courts do not contain any reference to moral certainty. 511 U.S. at 18–28, 114 S.Ct. at 1249–54, 127 L.Ed.2d at 598–604. The *Victor* Court agreed with the petitioners argument that moral certainty has lost its historical meaning and considered that the phrase might not be recognized by modern jurors as a synonym for proof beyond a reasonable doubt. *Id.* at 13–14, 114 S.Ct. at 1246–47, 127 L.Ed.2d at 595. While not holding that use of the term moral certainty in the full context of the instruction lowered the standard of proof from that which due process requires, the Court also stated that we do not condone the use of the phrase. *Id.* at 16, 114 S.Ct. at 1248, 127 L.Ed.2d at 596–97. Using *Victor* as a beacon, the California Supreme Court, in *People v. Freeman*, 8 Cal.4th 450, 34 Cal. Rptr.2d 558, 882 P.2d 249, 279–80 (1994), held that the trial courts might safely delete "moral evidence" and "moral certainty" from the reasonable doubt instruction based upon the Court's conclusion that the phrases add nothing to the jury's understanding of the concept of reasonable doubt and are not required to satisfy due process under the federal constitution. *Id.* We are constrained to fully agree.[2]

Accordingly, we hold that the district court's reasonable doubt instruction ade-quately and accurately set forth the state's burden of proof. We find no error in the instruction.

### D. Whether Instruction 20 Reduced The State's Burden To Less Than Beyond A Reasonable Doubt

■ Stricklin argues that the district court gave a jury instruction (instruction 20), which diminished the state's burden to less than beyond a reasonable doubt and violated his right to a fair trial. Instruction 20 states:

It is not necessary that every fact and circumstance put in evidence on behalf of the State be established beyond a reasonable doubt, but it is necessary to sustain a conviction that all facts and circumstances in evidence, when taken together, establish beyond a reasonable doubt the material elements of the offense charged.

In addition to the above instructions, the jury was instructed that their decision had to be unanimous and that the state bore the burden of proof:

The jury will bear in mind that the burden is always on the prosecution to prove beyond a reasonable doubt every essential element of any offense which is essentially included—which is necessarily included in the crime charged, but the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

Taken together, we conclude that instruction 20 did no more than instruct the jury that the state's burden of proof—beyond a reasonable doubt—related to the sum of the evidence submitted on each essential element of the offenses charged, not to every isolated fact and circumstance presented. As such, instruction 20 is a true and accurate state-

approved by every California court that has ruled on the issue, as well as by the Ninth Circuit Court of Appeals in *Lisenbee v. Henry*, 166 F.3d 997, 999–1000 (9th Cir.1999).

2. Stricklin also argues that instruction 18 violated his right to due process under the Idaho Constitution, Art. 1, § 13. We cannot find in the record any reference to an argument seeking a greater scope of protection under the Idaho Constitution. From our review of the record of proceedings below, Stricklin's state constitutional argument is being raised for the first time on appeal in his Reply Brief. As a result, the issue has not been adequately preserved for appeal or properly briefed. In his motion for a new trial and in his initial brief on appeal, Stricklin did not seek a greater scope of protection under Art. 1, § 13 of the state constitution than he did under the Fifth Amendment. Accordingly, it would not be appropriate to now consider Stricklin's state constitutional claim. *State v. Ross*, 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996); *State v. Wheaton*, 121 Idaho 404, 406–07, 825 P.2d 501, 503–04 (1992).

ment of the law. Stricklin has failed to indicate how this instruction denied him a fair trial.

## E. Whether Instruction 20 Diminished The Effect Of The *Holder* Instruction

■ Stricklin also argues that instruction 20, when read together with the *Holder* instruction (instruction 19), had the effect of eviscerating the *Holder* instruction.[3] We note that a defendant is no longer entitled to a so-called *Holder* instruction where the case against the defendant consists purely of circumstantial evidence. *State v. Humpherys*, 134 Idaho 657, 8 P.3d 652 (2000). Prior to *Humpherys*, the defendant was entitled to a *Holder* instruction where the state's case rested entirely upon circumstantial evidence. *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979); *State v. Sundquist*, 128 Idaho 780, 781, 918 P.2d 1225, 1226 (Ct.App.1996). In *Humpherys*, a unanimous Idaho Supreme Court overturned *Holder* and its progeny.

Accordingly, we find no error in the court's decision to give instruction 20.

## III.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard Of Review

■ Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction supported by substantial and competent evidence will not be set aside on appeal. *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991); *Decker*, 108 Idaho at 684, 701 P.2d at 304. Moreover, we will consider the

evidence in the light most favorable to the prevailing party. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *Decker*, 108 Idaho at 684, 701 P.2d at 304.

### B. Analysis

■ Pursuant to Idaho Code § 18–2403(3), "a person commits theft when he knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the intent of depriving the owner thereof." *See Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 130 Idaho 100, 104, 936 P.2d 1342, 1346 (Ct.App.1997). Theft includes the "wrongful taking, obtaining or withholding of another's property ... by conduct heretofore defined or known as ... embezzlement...." I.C. § 18–2403(2)(b). Embezzlement occurs when a person who has lawful possession of the property of another and then, with fraudulent intent, appropriates the property to his own use. *See State v. Hamilton*, 129 Idaho 938, 941, 935 P.2d 201, 204 (Ct.App.1997). At the time Stricklin committed the instant offenses, if the value of the property exceeded $300, the crime was grand theft, a felony. I.C. §§ 18–2407(1)(b)(1), 18–2408(1).

Stricklin asserts that, even when the evidence is viewed in the light most favorable to the prosecution, the state failed to prove him guilty beyond a reasonable doubt. We have reviewed the full evidence, including testimony regarding the processes of counting the day's proceeds, calculating net income, depositing funds and maintaining the restaurant's ledger books. No useful purpose would be served by a detailed recitation of these facts. Suffice it to say that the owner, Williams, testified that Stricklin did not have permission to take any money from the business and that he had never had losses— shortages in the deposits—like those experi-

---

**3.** The *Holder* instruction advised the jury that:

You cannot find the defendant guilty unless the circumstances proved by the evidence are consistent with the theory that the defendant is guilty and cannot be reconciled with any rational theory of the defendant's innocence.

If the evidence is susceptible to two reasonable interpretations, one of which points to the defendant's guilt and the other to the defendant's innocence, it is your duty to adopt the interpretation which points to the defendant's innocence and to reject the other which points to the defendant's guilty.

In addition, each fact which is essential to complete a step of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt.

enced during the last six months of Stricklin's tenure as the general manager of the Lewiston restaurant. Williams then testified to a series of shortages, indicating the difference between proceeds and deposits on each of the days alleged in the information.[4] The assistant managers testified that Stricklin altered the restaurant's ledger books, and that on several dates the deposit envelopes and deposit slips indicated less cash was deposited than that received by the store from sales.

Stricklin testified that the shortages on the dates the grand thefts were alleged to have occurred were due to him holding money from the deposit so he could add it in to the proceeds of other days in order to boost sales performance and meet his cost budget on a daily basis in order to earn bonuses. Stricklin admitted changing the numbers of customers and numbers in the ledger books to keep those figures in line with established averages.

While the state did not present direct evidence of what Stricklin actually did with the money, the state did not have the burden of doing so. The element of conversion is satisfied by evidence that restaurant funds were in Stricklin's lawful possession and then, he intentionally appropriated the funds to his own use. *See Hamilton*, 129 Idaho at 941, 935 P.2d at 204. Although Stricklin testified that he merely withheld funds to boost his sales on other dates, the jury was not required to believe him. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Id.* at 104, 822 P.2d at 1001;

*Decker*, 108 Idaho at 684, 701 P.2d at 304. From the evidence presented, the jury could properly infer that Stricklin appropriated the funds for his own use rather than to boost his sales on other dates. Therefore, we hold that substantial evidence exists in the record to support the jury's verdict on each of the nine counts of grand theft.

## IV.

## CONCLUSION

Stricklin failed to demonstrate that he was prejudiced by any of the district court's jury instructions. Moreover, Stricklin's verdict of guilt on each of the nine counts of grand theft is supported by substantial and competent evidence. Accordingly, Stricklin's judgment of conviction and sentence are affirmed.

Judge LANSING and Judge Pro Tem HART concur.

---

4. Williams testified to shortages of $822 on April 13, 1997 (Count I); of between $27 and $100 in cash, with a missing check for $567.50 on May 20, 1997 (Count II) nearly $1,200 on May 4, 1997 (Count III); $535 on April 20, 1997 (Count IV); $500 on April 17, 1997 (Count V); $968 on April 6, 1997 (Count VI); $338 on March 21, 1997 (Count VII); $350 on December 29, 1996 (Count VIII); and of $1100 on November 3, 1996 (Count IX).