55 P.3d 890

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ronald Theron HOFFMAN, Defendant–Appellant.**

**No. 27613.**

Court of Appeals of Idaho.

Sept. 20, 2002.

Molly J. Huskey, State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for appellant. Charles Isaac Wadams argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Ronald Theron Hoffman was convicted of aggravated assault on a law enforcement officer and aggravated battery on a law enforcement officer. On appeal, Hoffman contends that the district court erred in its instructions to the jury, that there was insufficient evidence to support the conviction for aggravated battery, and that his sentences are illegal and excessive.

## I.

### BACKGROUND

On November 17, 2000, at approximately 2:00 a.m., Sergeant Montoya, Detective Armstrong, and Deputy Shepard of the Canyon County Sheriff's Department went to a home where Hoffman was believed to be present. Their purpose was to execute a warrant for Hoffman's arrest. Once at the residence, Armstrong and Shepard went to the front door while Montoya, a canine handler, waited in the yard with his dog. Armstrong's knock was answered by an elderly man. After Armstrong asked whether Hoffman was there, the man gave Armstrong and Shepard permission to enter and led them to a back bedroom, where they saw Hoffman lying on a bed, wrapped in a blanket.

According to subsequent trial testimony, Hoffman became agitated and started to act aggressively. He began shuffling toward Armstrong and Shepard with his left hand wrapped in the blanket. While moving towards them, Hoffman told the officers that they would have to kill him if they wanted to arrest him. Because Hoffman's left hand was concealed in the blanket, both Armstrong and Shepard drew their weapons and demanded that Hoffman show his hands. When Hoffman did not comply, Shepard attempted to gain control of Hoffman's left hand by grasping it, but Hoffman slapped Shepard's hand away. Following an unsuccessful second attempt, Shepard used his pepper spray on Hoffman's eyes, causing Hoffman to stagger away from the officers.

While Hoffman was staggering backwards from the effects of the pepper spray, Sergeant Montoya and his dog entered the bedroom. Montoya repeatedly yelled at Hoffman that the dog would be released unless Hoffman showed his hands. Hoffman did not respond, but instead continued to move backward, stepped onto the bed, and lunged for the window. At that point, Montoya released his dog, which attacked Hoffman's right arm. Hoffman and the dog rolled off the bed and onto the floor. Hoffman attempted to climb out the window a second time, but the dog jumped on Hoffman's back and dragged him back to the floor. When Hoffman attempted to go to the window a third time, Montoya "bear-hugged" Hoffman around the waist. While Montoya was attempting to wrestle Hoffman to the ground, Shepard began striking Hoffman's body with his flashlight. According to Shepard's testimony, Hoffman then reached around Montoya with his right hand and started grabbing for Montoya's pistol. Realizing what Hoffman was doing, Shepard repeatedly struck Hoffman's right arm with the flashlight, but the blows did not deter Hoffman and he continued to manipulate the gun. Shepard then yelled "gun, gun, gun," and dropped the flashlight in order to use both hands to prevent Hoffman from extracting the weapon from its holster.

According to Shepard, the moment he placed both hands on Montoya's weapon, a single shot was fired, hitting Montoya in the leg. Shepard then grabbed the barrel of the weapon with both hands and began to wrestle it away from Hoffman. However, when Shepard later took one hand off the weapon to radio dispatch that Montoya had been shot, Hoffman gained control of the pistol and pointed it at Montoya and Shepard. Shepard was eventually able to pull the weapon from Hoffman's hand, which allowed Armstrong to handcuff Hoffman and place him under arrest. The struggle for the

weapon lasted approximately five to seven minutes. Hoffman repeatedly told the officers throughout the struggle that he wanted the officers to kill him.

Hoffman was charged by information with one count of aggravated battery upon a law officer, Idaho Code §§ 18–903(c),–907(b),–915, and one count of aggravated assault upon a law officer, I.C. §§ 18–901(b),–905(a),–915; and the information alleged that as to each count, Hoffman was subject to a sentence enhancement for use of a firearm during the commission of the crime, I.C. § 19–2520. Hoffman was convicted of the charges after a jury trial. The district court sentenced him to a unified term of twenty-five years of imprisonment with ten years determinate for the aggravated battery and a concurrent ten-year determinate term for the aggravated assault.

## II.

## ANALYSIS

### A. Jury Instructions Regarding Intent

■ Hoffman first contends that the district court erred when it refused his request for an instruction incorporating the language of I.C. § 18–114, which specifies, "In every crime or public offense there must exist a union, or joint operation, of act and intent. . . ." The refusal of this instruction was crucial, Hoffman asserts, because it was the defense theory that he did not intend to shoot Sergeant Montoya.

When determining whether a jury was properly instructed, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Harris,* 136 Idaho 484, 485, 36 P.3d 836, 837 (Ct.App.2001); *State v. Tadlock,* 136 Idaho 413, 414, 34 P.3d 1096, 1097 (Ct.App. 2001); *State v. Hanson,* 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997). A trial

court's refusal of a proffered jury instruction will not be deemed error if the requested instruction was an erroneous statement of the law, addressed subject matter that was adequately covered by other instructions, or was not supported by the facts of the case. *State v. Cortez,* 135 Idaho 561, 565, 21 P.3d 498, 502 (Ct.App.2001); *State v. Lesley,* 133 Idaho 23, 25, 981 P.2d 748, 750 (Ct.App.1999); *State v. Schneider,* 129 Idaho 59, 63, 921 P.2d 759, 763 (Ct.App.1996).

Here, the jury was instructed on the elements of aggravated assault on a law enforcement officer and aggravated battery on a law enforcement officer. The instructions that defined "assault" and "battery" mirrored the definitions of the crimes found in I.C. §§ 18–901 and 18–903, and identified the specific mental states required for the commission of these offenses. No further instruction based on I.C. § 18–114 was necessary to inform the jury of the requisite mental elements. Therefore, the district court did not err in refusing the defendant's requested instruction.

### B. Variance Between Charging Instruments and Jury Instructions

■ Next, Hoffman contends that the jury instructions varied from the allegations of the charging information regarding the factors that caused the assault and the battery to be "aggravated." This variance, he asserts, deprived him of due process.

■ The information alleged, for each count, that the offense was aggravated because it was committed "by means of a deadly weapon, to-wit: a firearm. . . ." The jury was instructed, however, that the assault would be aggravated if it was committed "with a deadly weapon or instrument *or by any means or force likely to produce great bodily harm.*" (Emphasis added.)[1] As to battery, the jury was instructed that the

---

1. Idaho Code § 18–905 specifies four circumstances that will cause an assault to be "aggravated" and hence a felony. It states:

  An aggravated assault is an assault:
    (a) With a deadly weapon or instrument without intent to kill; or
    (b) By any means or force likely to produce great bodily harm.[; or]

  (c) With any vitriol, corrosive acid, or a caustic chemical of any kind.
  (d) "Deadly weapon or instrument" as used in this chapter is defined to include any firearm, though unloaded or so defective that it can not be fired.

crime would be aggravated if Hoffman "caused *great bodily harm, permanent disability,* or *permanent disfigurement* or used a deadly weapon." (Emphasis added.)[2] Hoffman complains that under the jury instructions, the jury may have convicted him based upon aggravating factors of which he was not given notice by the information. Hoffman did not bring this discrepancy between the information and the instructions to the attention of the trial court. He is not thereby precluded from presenting the issue to this Court, however, for errors in instructions given to the jury may be raised for the first time on appeal. *State v. Smith,* 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990).

■ The instructions of which Hoffman now complains unquestionably varied from the description of offenses contained in the information. Whether Hoffman is consequently entitled to a new trial turns upon whether the variance was prejudicial error or merely a harmless imperfection in the trial. *State v. Sherrod,* 131 Idaho 56, 59, 951 P.2d 1283, 1286 (Ct.App.1998). A variance between a charging instrument and a jury instruction necessitates reversal "only when it deprives the defendant of his right to fair notice or leaves him open to the risk of double jeopardy." *State v. Windsor,* 110 Idaho 410, 417–18, 716 P.2d 1182, 1189–90 (1985); *State v. Brazil,* 136 Idaho 327, 330, 33 P.3d 218, 221 (Ct.App.2001). Here, we are informed of no risk of double jeopardy, and therefore we examine whether Hoffman was deprived of fair notice of the elements of the offenses against which he needed to defend.

In both *Sherrod* and *Brazil,* this Court found it necessary to reverse a conviction of aggravated battery because instructions allowed the jury to base the finding of the aggravating factor of great bodily harm upon injuries other than those that were alleged to constitute great bodily harm in the charging information. The defendants were entitled to relief because they had not been on notice of a need to present evidence or argument that the victims' injuries, other than those referenced in the information, were insufficiently severe to amount to great bodily harm or permanent disfigurement.

We do not conclude that relief from the judgment is similarly warranted in the present case because, according to the trial evidence, the *only* significant bodily harm caused or threatened by Hoffman was from use of a deadly weapon, the firearm. On this evidence, there is no reasonable possibility that the jury could have found Hoffman guilty of aggravated assault by any means likely to produce great bodily harm other than by use of a deadly weapon and no risk that he was found guilty of aggravated battery for inflicting any "great bodily harm, permanent disability, or permanent disfigurement" except that which was caused by the deadly weapon. In other words, the jury could not have found him guilty on either count without also finding that he committed the offense through use of a deadly weapon, the aggravating factor that is alleged in the information. In addition, with respect to the sentence enhancement allegations, the jury specifically found that both the aggravated battery and the aggravated assault were "accomplished through the use of a firearm." These findings leave no doubt that the battery found by the jury was the infliction of a gunshot wound and that the assault found by the jury was the attempt or threat to use a firearm. Although the jurors may also have found that Montoya's gunshot wound constituted great bodily harm, permanent disability or permanent disfigurement, or that in the assault with the firearm Hoffman threatened to inflict great bodily harm, such findings would be mere surplusage and unnecessary to support the conviction. Accordingly, the variance between the charging information and the jury instructions did not prejudice Hoffman in his defense nor constitute a violation of due process.

---

2. Idaho Code § 18–907 specifies four circumstances that will cause a battery to be "aggravated" and hence a felony. It states:

A person commits aggravated battery who, in committing battery:
(a) Causes great bodily harm, permanent disability or permanent disfigurement; or
(b) Uses a deadly weapon or instrument; or
(c) Uses any vitriol, corrosive acid, or a caustic chemical of any nature; or
(d) Uses any poison or other noxious or destructive substance or liquid.

## C. Insufficiency of the Evidence

█ Hoffman next argues that the evidence presented at trial was insufficient for the jury to find that he intended to shoot Montoya. The evidence, Hoffman argues, is equally consistent with the defense theory that he was attempting to wrestle the gun from Montoya in order to commit suicide. Hoffman also asserts that there was no evidence presented at trial regarding how the weapon was actually fired from which reasonable minds could conclude that he intentionally shot Montoya.

When a finding of guilt is challenged on appeal, we view the evidence in the light most favorable to the prosecution. *Cortez,* 135 Idaho at 563, 21 P.3d at 500; *State v. Mace,* 133 Idaho 903, 905, 994 P.2d 1066, 1068 (Ct.App.2000); *State v. Gums,* 126 Idaho 930, 933, 894 P.2d 163, 166 (Ct.App.1995). The jury verdict will be overturned only if there is no substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Johnson,* 136 Idaho 701, 704, 39 P.3d 641, 644 (Ct.App. 2001); *State v. Miller,* 131 Idaho 288, 292, 955 P.2d 603, 607 (Ct.App.1997); *State v. Hughes,* 130 Idaho 698, 701, 946 P.2d 1338, 1341 (Ct.App.1997). This Court will defer to the jury's determinations of the credibility of witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Dietrich,* 135 Idaho 870, 873, 26 P.3d 53, 56 (Ct.App.2001); *State v. Henninger,* 130 Idaho 638, 640, 945 P.2d 864, 866 (Ct.App.1997); *State v. Aspeytia,* 130 Idaho 12, 19, 936 P.2d 210, 217 (Ct.App.1997).

█ We conclude that there was sufficient evidence from which the jury could reasonably infer that Hoffman intentionally shot Montoya. A finding of criminal intent may be based upon circumstantial evidence. *State v. Warden,* 100 Idaho 21, 24, 592 P.2d 836, 839 (1979); *State v. Oldham,* 92 Idaho 124, 132, 438 P.2d 275, 283 (1968). A defendant's intent may be inferred from his acts and conduct, and that is a common method of proof. *Id. See also State v. Cheatham,* 134 Idaho 565, 572, 6 P.3d 815, 822 (2000); *State*

*v. Herrera–Brito,* 131 Idaho 383, 386, 957 P.2d 1099, 1102 (Ct.App.1998). Here, both Shepard and Montoya testified that Hoffman reached around Montoya's waist to grab Montoya's pistol. Shepard said that, in order to prevent Hoffman from gaining control of the weapon, Shepard repeatedly struck Hoffman's arm and hand with a flashlight. This repeated striking did not deter Hoffman, who continued to grapple for the weapon until it discharged into Montoya's leg. Shepard and Montoya testified that after Hoffman gained control of the weapon, he pointed it at them; there is no evidence that Hoffman pointed the gun at himself as if attempting to commit suicide. The officers testified that Hoffman continued to aim the weapon at them until Shepard wrestled it away. This evidence, when viewed in the light most favorable to the prosecution, provided the jury a reasonable basis to reject Hoffman's "attempted suicide" defense and to conclude that he intentionally used the weapon to shoot Montoya.

## D. Firearm Enhancement

█ We next examine Hoffman's contention that the district court may have unlawfully enhanced both of his sentences for use of a firearm. Hoffman points out that in the event of a conviction for multiple crimes, multiple firearm enhancements are not permitted if the crimes "arose out of the same indivisible course of conduct." I.C. § 19–2520E. *See, e.g., State v. Searcy,* 118 Idaho 632, 638, 798 P.2d 914, 920 (1990); *State v. Custodio,* 136 Idaho 197, 207–08, 30 P.3d 975, 985–86 (Ct.App.2001). The prosecutor sought sentence enhancements on both of the charges against Hoffman, and the jury found that a factual basis for the enhancements existed. In imposing sentence, however, the district court did not specify whether or to what extent either sentence was enhanced. Hoffman maintains that the aggravated battery and aggravated assault in this case arose from a single, indivisible course of conduct, and therefore, if the district court enhanced both sentences, one of the enhancements is illegal. Because it is unclear whether both sentences were enhanced for use of a firearm, Hoffman requests that we

remand the case for clarification of his sentences.

 We decline to address this issue because Hoffman did not raise it below. The appropriate method to obtain clarification of sentences is to request such clarification from the court that imposed them. Hoffman has not done this. A claim of an illegal sentence is not an issue that may be presented for the first time on appeal, *State v. Drennen,* 122 Idaho 1019, 1023, 842 P.2d 698, 702 (Ct.App.1992), and it was not necessary for Hoffman to include this issue in his appeal in order to bring it to the district court on remand. Should Hoffman wish to bring this question to the district court, he may yet do so under Idaho Criminal Rule 35.

### E. Abuse of Discretion in Sentencing

 Finally, Hoffman argues that the district court abused its discretion by imposing excessive sentences. When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982).

Hoffman contends that the district court abused its discretion by failing to consider his remorse, mental illness, substance abuse problem, and willingness to receive treatment. However, the transcript from the sentencing hearing and the presentence investigation report indicate otherwise. Evidence before the district court led that court to justifiably conclude that Hoffman felt no remorse for his crimes. Hoffman suffers from mental health and substance abuse problems, but he has proven not to be amenable to treatment in the past. Indeed, Hoffman previously failed to complete a court-ordered substance abuse and mental health treatment program.

Hoffman's substantial criminal background supports the district court's sentence. He has three previous felony convictions, including one for felony assault, as well as numerous misdemeanor convictions. Previous fines, terms of probation, and incarcerations have proven insufficient to rehabilitate Hoffman or deter him from further criminality. Finally, the nature and severity of assaulting and battering police officers with a service pistol warrant the sentences that were imposed. No abuse of the district court's sentencing discretion has been demonstrated.

## III.

## CONCLUSION

Hoffman has shown no prejudicial error in the trial proceedings, and we conclude that the trial evidence is sufficient to support the jury's findings of guilt. We also conclude there has been no abuse of discretion in sentencing. Therefore, the judgment of conviction and sentences are affirmed.

Judge GUTIERREZ and Judge Pro Tem HORTON concur.