90 P.3d 910

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles Gilbert MONTOYA, Defendant–Appellant.**

**No. 28194.**

Court of Appeals of Idaho.

Jan. 8, 2004.

Review Denied May 28, 2004.

Molly J. Huskey, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant. Paul S. Sonenberg argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

GUTIERREZ, Judge.

Charles Gilbert Montoya was found guilty of three counts of lewd conduct with a minor child under sixteen, Idaho Code § 18–1508. The district court sentenced Montoya to three concurrent determinate life sentences. On appeal, Montoya argues that the district court abused its discretion in permitting cross-examination on an undeclared defense theory; that a variance existed between the information and the jury instructions; that the district court erred in instructing the jury by failing to give separate element instructions on each count and by failing to give a unanimity instruction; that cumulative errors occurred which warrant a new trial; that the district court imposed an excessive sentence and that the district court abused its discretion in denying Montoya's I.C.R. 35 motion for reduction of sentence. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

Montoya and his wife, Ina Montoya, had several children while living in Utah. The Montoyas' son, Michael Montoya, had a daughter, L.H., with Laura Hallett. In approximately 1995, Michael and Laura were taken into custody in Utah for drug-related charges. As a result, the Montoyas obtained physical custody of L.H., and her half-sister, C.H., from Utah's Health and Welfare Department, and took the girls to live with them in Heyburn, Idaho. The Montoyas eventually legally adopted L.H. and C.H.

In 2000, C.H. moved out of the Montoya household to live with Hallet, in Oregon. Shortly thereafter, Montoya was charged with lewd conduct involving C.H., based on events occurring at the Montoya household between January of 1997 and March of 2000. At trial, twelve-year-old C.H. testified that Montoya repeatedly sexually abused her when she lived in Heyburn. She stated that Montoya had abused her on several occasions, including penetrating her with his finger, forcing her to perform oral sex, and forcing sexual intercourse.

Although Montoya's defense at trial was a general denial of C.H.'s allegations, speculating that C.H. was coached by Hallet and that C.H. made the allegations so she could live with Hallet, the state was allowed to elicit testimony from Montoya regarding an impotency defense which was investigated prior to trial but not asserted during trial. Prior to trial, Montoya's defense counsel had moved for and obtained an order allowing a medical exam to determine if Montoya was impotent. The state knew of this order because Montoya was indigent, and defense counsel had asked the court for funding for the exam.

However, no medical exam was ever conducted. During cross-examination, the prosecutor asked Montoya if none of the events which C.H. had testified to were true. Montoya replied that this was correct, that C.H.'s testimony was false. The prosecutor then asked, "And that hasn't always been your defense, has it?" Defense counsel objected to this question, whereupon the judge removed the jury and argument was had on whether this line of questioning was proper. The district court found that the line of questioning was relevant to Montoya's credibility, and the prejudicial nature of the testimony did not outweigh its probative value. The following testimony was then elicited from Montoya:

Q: Mr. Montoya, let me ask you this: As you testify in front of these people today, you're not indicating to them that you weren't capable of performing these acts because you were impotent?

A: No.

Q: Just that [C.H.] had made up these stories?

A: No, I didn't say [C.H.] made those stories up.

Q: She's repeating them then is what you're saying?

A: I'm saying it's not [C.H.'s] words.

Q: Okay. That isn't what you were saying last June, is it? Didn't you ask this court to be evaluated because you were alleging you were impotent as a result of an accident that happened in 1990?

A: I did not ask that.

Q: You didn't ask that?

A: No.

Q: And if there is a motion in this court file and an order ordering you to be evaluated by a urologist to make that determination, you're indicating that those aren't facts that were provided by you to your attorney?

A: Yes.

Q: They were?

A: Those words came from Soto.

Q: Dan Soto? [1]

A: Soto, yeah. They didn't come from me. I've been objecting through those the whole time.

Q: Those were somebody else's words too?

A: Yes.

The jury returned a guilty verdict on all three counts and the district court sentenced Montoya to three concurrent determinate life sentences. Montoya filed a Rule 35 motion for reduction of sentence, which the district court denied. Montoya appeals.

## II.

## CROSS–EXAMINATION

Montoya's first claim of error is that the district court abused its discretion by permitting cross-examination into the impotency defense theory. In permitting cross-examination on the unasserted defense, the district court determined that Montoya had opened the door to credibility issues by his testimony that C.H. was not telling the truth.

■ The trial court has broad discretion in determining the admissibility of testimonial evidence, and a decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *State v. Smith,* 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). A potential defense must be raised through evidence presented by the

---

1. Dan Soto was a detective for the City of Heyburn Police Department. Nothing in the record discloses Soto's connection to the impotency defense. The motion for the medical exam was presented and argued by David Haley, Deputy Public Defender, Minidoka County Public Defender's Office.

defendant before the state may introduce evidence concerning that issue. *State v. Johnson,* 132 Idaho 726, 729, 979 P.2d 128, 131 (Ct.App.1999); *State v. Boehner,* 114 Idaho 311, 317, 756 P.2d 1075, 1081 (Ct.App. 1988).

■ In the case at bar, Montoya never asserted a defense of impotency. Montoya's defense was a general denial of the charges, and while defense counsel did request and obtain an order for a medical examination to determine if Montoya was impotent, such pretrial action falls far short of raising the impotency issue as a defense. Because Montoya introduced no evidence asserting impotency as a defense, it was error for the court to allow the state to introduce such evidence.

■ However, we conclude the introduction of evidence regarding impotency as a defense was harmless error. An error is harmless where the reviewing court finds beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence. *See State v. Gomez,* 137 Idaho 671, 673, 52 P.3d 315, 317 (2002); *State v. Slater,* 136 Idaho 293, 300, 32 P.3d 685, 692 (Ct.App. 2001). Montoya testified that any claims of impotency were the words of Detective Dan Soto, and not a claim ever made by him. The fact that this defense was not presented at trial was also consistent with Montoya's

directions to his attorney, as expressed in Montoya's testimony. If anything, this line of cross-examination tended to bolster Montoya's credibility. Therefore, we conclude beyond a reasonable doubt that the jury would have rendered the same verdict despite the error.

### III.

### VARIANCE

We next examine Montoya's claim of variance. Montoya argues that in instructing the jury on the offense of lewd conduct the district court created an impermissible variance between the information and the jury instructions. The information charged Montoya with three counts of lewd conduct: one count of manual-genital contact, one count of oral-genital contact, and one count of genital-genital contact.[2] However, the jury was instructed that an element of each crime was that "the defendant, Charles G. Montoya, committed an act of manual-genital contact or oral-genital contact or genital-genital contact *or any other lewd or lascivious act* upon or with the body of C.H." (emphasis added).[3] Montoya claims this instruction created a fatal variance depriving him of his right to fair notice and due process of law.

Recent Idaho cases involving variance analysis have focused on variance as between the information and the jury instructions.[4]

**2.** Count I of the Information read:

That the said defendant, Charles Gilbert Montoya, on or about or between January 1997, to March 2000, at 2401 N. Street, in the city of Heyburn, County of Minidoka, State of Idaho, committed the public offense of LEWD CONDUCT WITH A MINOR CHILD UNDER SIXTEEN (16) YEARS, in violation of Idaho Code Section 18–1508, by then and there willfully, unlawfully, intentionally, feloniously and lewdly committing a lewd and lascivious act upon the body of a minor child under the age of sixteen (16) years, one [C.H.], now of the age of ten (10) years, by then and there having *manual/genital* contact with the intent of appealing to, arousing, or gratifying the sexual desires of said Charles Gilbert Montoya.
(Emphasis added.) Counts II and III were written the same, with "oral/genital" and "genital/genital" being substituted for "manual/genital."

**3.** Jury Instruction 18 read:

In order for the defendant to be guilty of Lewd and Lascivious Conduct, the state must prove each of the following:
1. On or about or between January 1997 and March 2000,
2. in the state of Idaho
3. the defendant, CHARLES G. MONTOYA, committed an act of manual-genital contact or oral-genital contact or genital-genital contact or any other lewd or lascivious act upon or with the body of [C.H.],
4. [C.H.] was a child under sixteen (16) years of age, and
5. the defendant committed such act with the specific intent to arouse, appeal to, or gratify the lust or passions or sexual desires of either of them.
. . . .

**4.** *See State v. Alvarez,* 138 Idaho 747, 69 P.3d 167 (Ct.App.2003); *State v. Hoffman,* 137 Idaho 897, 55 P.3d 890 (Ct.App.2002); *State v. Brazil,* 136 Idaho 327, 33 P.3d 218 (Ct.App.2001); *State v. Sherrod,* 131 Idaho 56, 951 P.2d 1283 (Ct.App.

The state asserts this is an incorrect analysis, that variance involves only a difference between the allegations in the charging instrument and the *proof* adduced at trial, and does not extend to jury instructions. However, the state's argument is misguided as the state's position is premised on the use of the term "variance" to define the issue as one of *only* a difference between the charging instrument and the proof adduced at trial. Examination of Idaho case law indicates that variance issues arise in different contexts, including with the giving of jury instructions.

Early Idaho cases addressed variance as between the allegations of the information and the proof at trial. *See State v. Love,* 76 Idaho 378, 283 P.2d 925 (1955); *State v. Marks,* 45 Idaho 92, 260 P. 697 (1927). In *Love,* for example, the defendant claimed a variance between an information which described a specific building and designated the owner and possessor of the building, and proof at trial which established that a portion of the building was in the possession of an employee of the owner. The Idaho Supreme Court affirmed Love's conviction, concluding Love had been neither prejudiced in his defense nor exposed to double jeopardy because the variance between the allegation and proof was immaterial. *Love,* 76 Idaho at 381, 283 P.2d at 926. More recent cases recognize that variance may also occur as between the charging instrument and the jury instructions. For example, in *State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1985), the defendant claimed a fatal variance existed between the information, which charged her with only premeditated murder, and the jury instructions which allowed for conviction of premeditated murder *or* felony murder based on an attempt to perpetrate a burglary. The Idaho Supreme Court held that Windsor was not misled or embarrassed in her defense because it was clear from the beginning of the case that the state intended to proceed on both premeditated and felony

murder theories.[5] *Windsor,* 110 Idaho at 417–18, 716 P.2d at 1189–90. Thus, we read *Windsor* as recognition that a variance may also arise as between the charging instrument and the jury instructions, and the question then becomes one of whether the defendant's substantial rights have been affected. *Windsor,* 110 Idaho at 417, 716 P.2d at 1189.

■ The state argues we should overrule precedent and hold that a claim of variance involving jury instructions must be preserved by objection at trial. Under the principle of *stare decisis,* a doctrine, defense or holding may be reversed when time has shown it to be unjust or unwise. *State v. Maidwell,* 137 Idaho 424, 426, 50 P.3d 439, 441 (2002) (citing *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985)). In *State v. Smith,* 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990), the Idaho Supreme Court stated that due to amendment to the rules of civil and criminal procedure, it was no longer necessary to object to instructions in either civil or criminal cases in order to preserve an issue of the propriety of the instructions. Until and unless the Idaho Supreme Court revisits this issue, we are bound to treat jury instruction error involving the issue of variance no differently than jury instruction error in any other context.

■ With regard to a jury instruction variance claim we inquire as to whether the substantial rights of the defendant have been impaired. I.C.R. 52; *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *Windsor,* 110 Idaho at 417, 716 P.2d at 1189; *State v. McBride,* 123 Idaho 263, 267, 846 P.2d 914, 918 (Ct.App.1992). A variance is held to affect the substantial rights of a defendant when it deprives the defendant of his right to fair notice or leaves him open to the risk of double jeopardy. *Windsor,* 110 Idaho at 417–18, 716 P.2d 1189–90.[6] The notice requirement of due

1998); *State v. Hanson,* 130 Idaho 842, 949 P.2d 590 (Ct.App.1997).

**5.** In *Windsor,* the defendant was charged not only with premeditated murder, but also with burglary and grand theft, which could give notice of a felony murder theory. Also, prior to trial the state proposed a plea negotiation whereby

Windsor would plead guilty to both premeditated murder and felony murder in exchange for a sentence other than death. *Windsor,* 110 Idaho at 418, 716 P.2d at 1190.

**6.** It has been advanced that protection against future double jeopardy is no longer the concern that it once was, because the availability of trial

process requires courts to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his defense. *Windsor,* 110 Idaho at 418, 716 P.2d at 1190; *McBride,* 123 Idaho at 267, 846 P.2d at 918.

■ The Information charged Montoya with acts of manual-genital, oral-genital and genital-genital contact. Additionally, evidence of Montoya french-kissing and touching the breasts of C.H. was adduced at trial. Jury Instruction 18 included an alternate element of "any other lewd and lascivious act." It is clear that this instruction expanded the elements upon which the jury could convict Montoya of lewd and lascivious conduct with a minor. We conclude, however, that this error amounts to harmless error, and does not require reversal. A trial error that does not affect substantial rights of the complaining party will be deemed harmless. Idaho Criminal Rule 52;[7] *State v. Fairchild,* 121 Idaho 960, 969, 829 P.2d 550, 559 (Ct. App.1992); *State v. Croasdale,* 120 Idaho 18, 20, 813 P.2d 357, 359 (Ct.App.1991). Error is harmless if the reviewing court can conclude beyond a reasonable doubt that the result of the trial would have been the same absent the error. *Id.* Under this standard, instructional errors related to matters that were uncontested at trial may be harmless. *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (omission of materiality element in jury instructions on bank fraud and tax fraud was harmless error where the element was not contested at trial); *State v. Brill,* 21 Idaho 269, 274–76, 121 P. 79, 81 (1912) (instruction erroneously stating that ownership of stolen money need not be proven did not prejudice defendant because he based his defense upon an alibi and not upon the erroneously described element).

■ Here, the victim and Montoya were the only two witnesses at trial. All the evidence of contacts between Montoya and C.H. was supplied by the victim's testimony. Montoya neither contradicted C. H.'s testimony with a different version of events nor presented evidence that impeached C.H. with respect to some of the incidents but not as to others. Instead, Montoya provided a general denial that any of the alleged incidents occurred. He averred that Hallett had coached C.H. to make the allegations, and C.H. made them because she wanted to live with Hallett. By finding Montoya guilty, the jury obviously found C. H.'s testimony more credible than Montoya's testimony. There is no reason for this Court to conclude that the jury would have believed some of the incidents alleged by C. H., but not the others. *See State v. Banks,* 273 Kan. 738, 46 P.3d 546, 552 (2002). Based on the legal defense presented at trial, we can unequivocally determine that the jury would not have disagreed as to the commission of any of the acts. We conclude that the jury still would have found Montoya guilty of each count of lewd conduct. Therefore, the error in elements Instruction 18 is harmless.[8]

## IV.

### JURY INSTRUCTIONS

We next address Montoya's argument that the district court erred in failing to give separate element instructions for each count charged, and in failing to give a unanimity instruction. The question whether the jury was properly instructed is one of law over which this Court exercises free review. *State v. Buckley,* 131 Idaho 179, 182, 953 P.2d 619, 622 (Ct.App.1997). On appeal, jury instructions are viewed as a whole, not individually, to determine whether the jury was properly and adequately instructed on the applicable law. *State v. Rozajewski,* 130 Idaho 644, 646, 945 P.2d 1390, 1392 (Ct.App. 1997). To be reversible error, an instruction must have misled the jury or prejudiced the

---

transcripts allows for a more thorough, subsequent determination of exactly what was before a court in a prior prosecution. *Windsor,* 110 Idaho at 418 n. 1, 716 P.2d at 1190 n. 1.

7. Idaho Criminal Rule 52 provides that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

8. Based on this analysis, we also reject Montoya's second claimed error in the instructions, that the Information alleged arousing the lust, passions or sexual desires of Montoya, but Instruction 18 expanded this to include arousing the lust, passions or sexual desires of the victim.

defendant. *State v. Hanson,* 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997). The court is required to provide instructions on all matters of law necessary for the jury's information. I.C. § 19–2132(a); *State v. Patterson,* 126 Idaho 227, 230, 880 P.2d 257, 260 (Ct.App.1994). The court should not use an instruction, however, which misleads the jury or misstates the law. *See State v. Humpherys,* 134 Idaho 657, 659, 8 P.3d 652, 654 (2000); *State v. Merwin,* 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998).

### A. Failure to Instruct on Separate Counts

 Montoya argues that each lewd conduct count should have had a separate jury instruction identifying the elements of the offense rather than the single elements description in Instruction 18. Instruction 18, he asserts, invited the jury to cumulate the evidence instead of requiring findings of manual-genital, oral-genital, and genital-genital contact, respectively, for the three counts. Montoya did not object to the instructions given in this regard. He is not precluded from presenting the issue on appeal, however, for errors in instructions given to the jury may be raised for the first time on appeal. *State v. Hoffman,* 137 Idaho 897, 901, 55 P.3d 890, 894 (Ct.App.2002).

Although a separate elements instruction for each count would have been preferable, we conclude there was no reversible error.[9] Instruction 4 identified separately the three counts and the exact nature of each count's underlying act. Instruction 11 instructed the jury that each count charged a separate and distinct offense.[10] Instruction 18, which combined the three counts, was a correct statement of the law. In reviewing Instructions 4, 11 and 18, and the verdict form, we conclude the jury was adequately informed that each count was separate and should be decided separately without inviting the jury to cumulate the evidence from one count to another. *See State v. Stricklin,* 136 Idaho 264, 266, 32 P.3d 158, 160 (Ct.App.2001). Thus, the combination of the three counts of lewd conduct into a single element instruction did not mislead the jury or prejudice Montoya. *See Brown v. State,* 137 Idaho 529, 534–35, 50 P.3d 1024, 1029–1030 (Ct. App.2002); *Stricklin,* 136 Idaho at 266–67, 32 P.3d at 160–61.

### B. Failure to Give Unanimity Instruction

 Montoya also argues that the district court's failure to give a unanimity instruction was reversible error. Where there is trial evidence of more than one act that could constitute the charged crime, a unanimity instruction is used to tell the jury that they must find a defendant guilty beyond a reasonable doubt based on a single agreed upon incident, thus ensuring the defendant has a unanimous jury verdict. *See Miller v. State,* 135 Idaho 261, 267–68, 16 P.3d 937, 943–44 (Ct.App.2000). A trial court is required to give a unanimity instruction where there is evidence of more criminal acts than have been charged, regardless of whether the instruction has been requested by the defendant. *See id.*

 In this case, the state charged Montoya with three counts of lewd conduct based on three different types of contact, manual-genital, oral-genital, and genital-genital, which occurred during the period of January 1997 to March 2000. In her testimony, C.H. stated that each type of act occurred several times with Montoya over that time period. C.H. testified to manual-genital contact in Montoya's bedroom "a few times." She testified to genital-genital contact in Montoya's bedroom and the garage "quite a few" times. She testified to oral-genital contact in the garage and in the downstairs of the house a

---

**9.** In practice, where the statute delineates several ways in which the statute may be violated, it is more accurate to give a separate element instruction on each count, setting out the count's specific allegations, rather than combining the separate counts into one element instruction which uses statutory language.

**10.** Instruction 11 stated:

Each count charges a separate and distinct offense. You must decide each count separately on the evidence and the law that applies to it, uninfluenced by your decision as to any other count. The defendant may be found guilty or not guilty on any or all of the offenses charged.

At the end of the trial you will indicate your findings for each of the counts on the same verdict form, which will be provided for you.

"few times." C.H. did not provide any details of specific incidents that occurred with Montoya. She generally described the types of contact that occurred and where each type of contact usually took place, and said that each type of contact occurred more than once. Thus, there was evidence that Montoya committed multiple offenses of manual-genital contact, multiple offenses of oral-genital contact and multiple offenses of genital-genital contact. Accordingly, the district court erred in failing to provide the jury with a unanimity instruction. *See Miller*, 135 Idaho at 267–68, 16 P.3d at 943–44.

We next determine whether the failure to provide the unanimity instruction was harmless. An error involving jury instructions is considered harmless if it is without a reasonable doubt that the jury would have reached the same result despite the error. *See Miller*, 135 Idaho at 268, 16 P.3d at 944. *See also State v. Koch*, 115 Idaho 176, 765 P.2d 687 (Ct.App.1988).

■ The acts C.H. described, although occurring with significant breaks, were not distinguished in their circumstances from each other, other than the type of contact and where that type of contact generally occurred in Montoya's house. Any of the incidents of manual-genital, oral-genital, or genital-genital contacts described by C.H. could have satisfied that particular count. Montoya provided the same general denial that any of the alleged incidents occurred. By finding Montoya guilty, the jury obviously found C.H.'s testimony more credible than Montoya's testimony. Because Montoya did not contradict C.H.'s testimony with a different version of events, there is no reason for this Court to conclude that the jury would have believed some of the incidents alleged by C.H., but not the others. *See State v. Banks*, 273 Kan. 738, 46 P.3d 546, 552 (2002). We conclude beyond a reasonable doubt that the jury would have found Montoya guilty of each count of lewd conduct, even if a unanimity instruction had been given. Therefore, we conclude that the failure to give a unanimity instruction in this case is not reversible error.

## V.

## CUMULATIVE ERROR DOCTRINE

■ Montoya argues that the many errors which occurred in his trial require that we reverse his conviction for failure to receive a fair trial. An accumulation of irregularities each of which in itself might be harmless, may in the aggregate, show the absence of a fair trial. *State v. Vandenacre*, 131 Idaho 507, 513, 960 P.2d 190, 196 (Ct. App.1998). A defendant is entitled to a fair trial, but not a perfect trial. *State v. Enno*, 119 Idaho 392, 408, 807 P.2d 610, 626 (1991). A sufficient accumulation of irregularities does not exist here. We concluded that introduction on cross-examination of evidence concerning the undeclared impotency defense was error, but that it was harmless. As previously stated, the error complained of here worked to Montoya's favor by having the effect of bolstering his credibility. We also concluded that the trial court erred in giving jury instructions that created a variance and in failing to give a unanimity instruction, but that these errors were harmless. The jury instruction errors cumulatively had no effect on the jury's determination due to Montoya's general denial defense theory. Thus, Montoya has shown no basis under the cumulative error doctrine for reversal of his judgment of conviction.

## VI.

## SENTENCING

Finally, Montoya challenges his sentence on two grounds. First, Montoya argues that the sentence imposed against him was excessive. Second, Montoya argues that the district court's denial of his Rule 35 motion for reduction of sentence was an abuse of discretion.

### A. Excessive Sentence

Appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121

Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

In this case, the district court sentenced Montoya to three determinate life sentences to be served concurrently. Montoya was fifty-six years old at the time of sentencing. The district court considered the appropriate factors at sentencing, including the protection of society and rehabilitation. The district court noted that Montoya was a danger to society, as evidenced by the nature of his crimes. The district court considered that Montoya had repeatedly sexually abused a little girl who considered him to be her grandfather. The district court also considered Montoya's previous conviction in Utah for incest with his own daughter. In that case, Montoya sexually abused his daughter for several years, and she became pregnant with his child when she was thirteen. The district court also considered that Montoya refused to cooperate with the presentence investigator, indicating his unwillingness to be rehabilitated. Thus, due to the heinous nature of his crimes, the severe harm inflicted on C.H., Montoya's previous criminal record and his lack of rehabilitative potential, we conclude the district court did not abuse its discretion in sentencing Montoya to three concurrent determinate life sentences.

## B. Rule 35 Motion

Montoya also argues that the district court abused its discretion in denying his Rule 35 motion. If the sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *State v. Hernandez,* 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991).

Montoya did not present new evidence to the district court in support of his Rule 35 motion. In its written decision and order, the district court noted that Montoya started abusing C.H. when she was seven years old and that he has shown no remorse for his crimes. The district court also emphasized that Montoya's previous incest conviction was due to a "disturbingly similar course of conduct" against a relative. The district court indicated that its primary goal in fashioning Montoya's sentence was the protection of society, especially little girls over whom Montoya may have a position of trust and authority. The district court also intended that the sentence would deter other would-be repeat sexual offenders. Having concluded that the sentence was not excessive at the time of pronouncement and considering that no new information was presented, we conclude that the district court did not abuse its discretion in denying Montoya's Rule 35 motion for reduction of sentence.

## VII.

## CONCLUSION

Based on the foregoing conclusions, we affirm Montoya's judgment of conviction and the sentences imposed thereon.

Chief Judge LANSING and Judge PERRY concur.