90 P.3d 920

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Philip Joseph GAIN, Defendant–Appellant.**

Nos. 28071, 28516.

Court of Appeals of Idaho.

Jan. 21, 2004.

Molly J. Huskey, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant. Paul S. Sonenberg argued.

Hon. Lawrence G. Wasden, Attorney General; Melissa Nicole Moody, Deputy Attorney General, Boise, for respondent. Melissa Nicole Moody argued.

PERRY, Judge.

Philip Joseph Gain appeals from the judgment of conviction and sentences entered by the district court after a jury found him guilty of three counts of lewd conduct with a minor child under sixteen. Gain also appeals from the district court's denial of his I.C.R. 35 motion for reduction of his sentences. We affirm.

## I.

### FACTS AND PROCEDURE

In February 1994, after attending a school program that discussed good and bad touching, Gain's third-grade daughter reported to a school counselor that Gain would

sometimes rub her legs when they were sore and that he would touch her in other places. Gain's daughter wasn't sure whether the touching was wrong. An interview was arranged at Children at Risk Evaluation Services (CARES), a clinic where children suspected of being abused are physically examined and interviewed. Prior to the interview, the daughter spoke with her mother who told her that Gain would not do that to her and to please tell the truth rather than destroy the family. The daughter told the CARES interviewer that her previous report was not true.

After years of moving from place to place and experiencing financial and family problems, Gain and his wife separated. Gain's daughter and son lived with him in Idaho. In January of 2001, Gain's daughter, then sixteen years old, reported that she had been sexually abused by Gain since 1994. A grand jury indicted Gain on four counts of lewd conduct with a minor child under sixteen. I.C. § 18–1508. One count was subsequently dismissed for improper venue, and Gain was tried on the remaining three counts. A jury found Gain guilty of all three counts. As a result, the district court sentenced Gain to concurrent unified terms of imprisonment of twenty-five years, with minimum periods of confinement of twelve years. Gain filed an I.C.R. 35 motion for reduction of his sentences, which the district court denied.

On appeal, Gain argues that the district court erred when it failed to instruct the jury that, in order to find Gain guilty, it must unanimously agree upon the underlying criminal act constituting the offense charged in each count. Gain also contends that his due process rights were violated during sentencing, that his sentences are excessive, and that the district court abused its discretion when it denied his Rule 35 motion for reduction of his sentences.

## II.

## ANALYSIS

### A. Unanimity Instruction

■ Gain argues that the state in this case presented evidence of more than one possible act for each of the three counts with which

Gain was charged. Gain contends that the district court had a duty to instruct the jury that, before it could find Gain guilty of any count, it must unanimously agree on the criminal act that supported the charge. The state argues that a unanimity instruction was not necessary because the evidence presented at trial pointed only to one specific criminal act underlying each count. The state also asserts that if the failure to give a unanimity instruction was error, the error was harmless as to counts two and three.

■ The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App. 1993).

■ In a criminal case, the district court has a duty to give the jury instructions on all matters of law necessary for their information. I.C. § 19–2132; *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct.App. 1999). The trial court thus must give instructions on rules of law material to the determination of the defendant's guilt or innocence. *Mack*, 132 Idaho at 483, 974 P.2d at 1112. Such obligatory instructions include those necessary to correctly inform the jury with respect to the nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted. *Id.* In the ordinary case, a general unanimity instruction suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict. *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir.1999). A specific unanimity instruction is required only when it appears that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts. *Id.* Where the evidence indicates that separate and distinct incidents of criminal conduct could provide a basis for a juror's finding of guilt on the criminal charge in any

count, the trial court must instruct the jury that it must unanimously agree on the specific incident constituting the offense in each count, regardless of whether the defendant requests such an instruction. *See Miller v. State*, 135 Idaho 261, 266–68, 16 P.3d 937, 942–44 (Ct.App.2000).

In *Miller*, the Court relied upon *State v. Petrich*, 101 Wash.2d 566, 683 P.2d 173 (1984). The *Petrich* court held that, when the evidence indicates that several distinct criminal acts support one count, jury unanimity must be protected by the state's election of the act upon which it will rely for conviction *or* by a clarifying instruction requiring the jurors to unanimously agree that the same underlying criminal act has been proven beyond a reasonable doubt. *Petrich*, 683 P.2d at 178. This rule has been referred to as the "either/or" test.

Based upon our review of the record, we conclude that the state's election of the act upon which it would rely to support the charge in each of the three counts against Gain rendered the giving of an unanimity instruction unnecessary. In this case, the first count alleged manual/genital contact on or about January through May 1994; the second count alleged oral/genital contact on or about February through June 1995; and the third count alleged oral/genital contact on or about June through August 1995. At a pre-trial conference, the state informed the district court that it would call the daughter as a witness and elicit testimony regarding the different places the family lived during the alleged time periods, her grade in school during those times, and the details about three main acts committed by Gain. The state made clear that those three distinct acts were the basis for the three counts with which Gain was charged. Specifically, the state identified the three acts as an incident that occurred one night in February 1994 after a CARES interview, an incident while at the Community House, and an incident that took place in another Ada County location. Although the state informed the district court that conduct similar to these incidents had happened more than once, it said that opening and closing arguments would focus specifically on those three acts.

At trial, including during opening and closing arguments, the state focused on those three incidents of Gain's sexual contact with his daughter. During the presentation of evidence, Gain's daughter referred to the February 1994 CARES interview in which she had recanted her first report of abuse. She testified that, during the night after the interview, Gain told her that if she was going to make sexual abuse allegations then she should know what she was saying. He then kissed her mouth using his tongue and fondled her genitals from the outside of her clothing. The only references to other instances of manual/genital contact were briefly mentioned as occurring once per week thereafter—no other details were given. The manual/genital incident on the night of the CARES interview was the focus of direct examination and cross-examination with respect to count one.

Gain's daughter next testified about the conduct underlying the charge in the count that had been dismissed for improper venue. She testified that, while living in Star as a fourth grader, Gain induced her to perform fellatio on him. She said that, while in Star, this conduct occurred several times.

As to count two, both direct and cross-examination of Gain's daughter focused on the Community House incident. She testified that, after living in Star, the family moved to the Community House in Boise. She stated that on one occasion, as a fourth grader, Gain induced her to perform fellatio on him while on a bunk bed, but she stopped when she heard voices and feared that someone would see them. Although Gain's daughter implied that this conduct happened more than once while living there, her testimony that it did not happen often was mentioned only briefly. Thus, for count two, the state focused on one specific incident of oral/genital contact.

For count three, Gain's daughter testified that, during the summer before her fifth grade year, the family had moved to an apartment in Boise. She said that, on the night after her birthday party, Gain allegedly induced her to perform fellatio on him and he then engaged in cunnilingus with her. She also testified that he would hold her on top of

him while they were in their underwear and move her around, as if she were riding him, and fondle her body. This was the only incident for which the state presented detailed evidence of oral/genital contact for count three.

The state also introduced a tape-recorded telephone conversation between Gain and his daughter in which, under police direction, his daughter confronted him with accusations of sexual abuse. Gain did not deny these accusations and implicitly acknowledged the sexual nature of his relationship with her.

During the defense's case, Gain denied the allegations in each count. Specifically, Gain testified that, as to count one, he was in Australia during the week of February 20–27, 1994. Out of the presence of the jury, Gain produced a passport supporting his claim. Although he was not allowed to introduce the passport into evidence due to discovery violations, Gain testified that he had an entry visa for Australia at the time of the CARES interview in 1994. He denied that he had any sexual contact with his daughter during the period after her CARES interview as alleged in count one. Gain generally denied the allegations as to counts two and three.

As stated previously, the rule in both *Miller* and *Petrich* requires a unanimity instruction or the state's election of a particular incident when the evidence indicates that separate and distinct incidents of criminal conduct provide the grounds for the criminal charge in each count. However, in both *Miller* and *Petrich*, the prosecution produced detailed evidence of a number of incidents for each count. In this case, the state presented detailed evidence of only one incident for each of the three counts. Although the jury also heard the testimony regarding the oral/genital incident that occurred in Star during approximately the same time frame covered by count two, the state, in closing argument, directed the jury that the act underlying count two was the incident the daughter described as taking place at the Community House. Thus, we conclude that the record reflects that the state elected the acts upon which it was relying in support of each count. Gain has failed to show that the district court erred by not instructing the jury that it must unanimously agree on the criminal act that supported each charge.

## B. Due Process at Sentencing

Prior to sentencing, Gain underwent a psychosexual evaluation. During the sentencing hearing, Gain informed the district court that he believed the psychosexual evaluation was not thorough or accurate. Gain requested that he be allowed to obtain a second evaluation at his own expense. The district court denied Gain's request and proceeded with sentencing. Gain claims that the district court violated his right to due process at sentencing because it refused him the opportunity to present favorable evidence and rebut the adverse information contained in his psychosexual evaluation.

The district court has broad discretion in determining what evidence is to be admitted at a sentencing hearing. *State v. Johnson*, 101 Idaho 581, 583, 618 P.2d 759, 761 (1980). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). The question in this case is whether the district court acted beyond the legal bounds of its discretion by violating Gain's right to due process.

A defendant is denied due process when the sentencing court relies upon information that is materially untrue or when the court makes materially false assumptions of fact. *State v. Dunn*, 134 Idaho 165, 172, 997 P.2d 626, 633 (Ct.App.2000). In order to minimize the likelihood of such due process violations, three fundamental safeguards are required: (1) the defendant must be afforded a full opportunity to present favorable evidence; (2) the defendant must be given a reasonable opportunity to examine all materi-

als contained in the presentence report; and (3) the defendant must be afforded a full opportunity to explain and rebut adverse evidence. *State v. Morgan,* 109 Idaho 1040, 1043, 712 P.2d 741, 744 (Ct.App.1985).

In this case, the psychosexual evaluation was conducted, at Gain's request, by a certified psychosexual evaluator from Sexual Abuse Now Ended (SANE). At his sentencing hearing, Gain objected to the evaluator's conclusion that Gain was a pedophile and that he was highly likely to reoffend. Gain argued that the evaluator did not spend enough time, only fifteen minutes, interviewing him and that the report was contradictory.

Although Gain was not allowed to obtain a second psychosexual evaluation for sentencing, the record does not suggest that an additional evaluation would have reached a different result. In forming his conclusions, the SANE evaluator reviewed Gain's social and sexual history, the police report of its investigation of Gain, the CARES interviews of Gain's daughter, several psychological test instruments, and other documents. The evaluator also interviewed Gain. The district court found the evaluator to be competent. Gain has failed to demonstrate that the evaluator spent inadequate time evaluating Gain or that the evaluation was contradictory.

As noted previously, Gain requested that the evaluation be conducted by a certified psychosexual evaluator from SANE, and this was done. Gain has not shown that his due process right to present favorable evidence, or to rebut unfavorable evidence in the presentence report, includes the right to multiple evaluations because he disagreed with the results of the initial evaluation, which he requested.

As to whether Gain was given a reasonable opportunity to examine the materials in his presentence report, it is not clear from the record when Gain received a copy of the evaluation for his review. The presentence investigator received a copy of the evaluation by fax on October 25, 2001, and the sentencing hearing took place on October 31, 2001. When asked by the district court at the sentencing hearing, Gain stated that he had been given sufficient time to examine the presentence report. Gain then informed the district court of errors he had discovered. Gain has thus failed to demonstrate that the amount of time he was given to review the evaluation, as part of his presentence report, was insufficient.

In arguing for a second evaluation, Gain was given the opportunity to explain and rebut the conclusions in the psychosexual evaluation. Gain testified regarding his previous law enforcement experience. He informed the district court that he had previously been through numerous psychological evaluations and that none of them had revealed any conclusions similar to the presentence psychosexual evaluation. Gain has not shown that his opportunity to rebut the information in the psychosexual evaluation was insufficient.

Finally, in his Rule 35 motion for reduction of his sentences, Gain provided no proof suggesting any error in the original evaluation, nor did he attach a new evaluation with different results. Thus, Gain has failed to demonstrate that the district court violated his right to due process or abused its discretion by denying his request for a second psychosexual evaluation.

## C. Excessive Sentences

▮ Gain argues that his sentences are excessive in light of his status as a first-time offender, his problem with alcoholism, his mental health issues, and his disastrous childhood. Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Burdett,* 134 Idaho 271, 1 P.3d 299 (Ct.App.2000); *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App. 1989); *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982); *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Applying these standards and having reviewed the record, we cannot say that the district court abused its discretion.

## D. Rule 35 Motion for Reduction of Sentences

▮ Gain argues that the district court abused its discretion when it denied his

Rule 35 motion for reduction of his sentences. Initially, we note that an order denying a motion for reduction of a sentence under Rule 35 is reviewed for an abuse of discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established. *See State v. Hernandez,* 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991); *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App. 1984); *Toohill,* 103 Idaho 565, 650 P.2d 707. If the sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *Hernandez,* 121 Idaho at 117, 822 P.2d at 1014.

Gain argues that he presented significant new information with his Rule 35 motion. He informed the district court that, while incarcerated, he completed programs relating to substance abuse, behavioral change, and parenting skills. Gain also informed the district court of his good conduct while in prison, his progress with mental health issues, and his ties to supportive community members and groups. The district court, after assuming that Gain was remorseful and that he had conducted himself well in prison, denied Gain's motion based on its conclusion that Gain posed a serious risk of reoffending and that the nature and seriousness of his crimes were such that a lesser sentence was not warranted.

This Court has held that although good conduct while in prison is worthy of consideration, it may not necessarily result in a reduction of a prisoner's sentence. *See Hassett v. State,* 127 Idaho 313, 317, 900 P.2d 221, 225 (Ct.App.1995); *State v. Sanchez,* 117 Idaho 51, 52, 785 P.2d 176, 177 (Ct.App.1990). The evidence concerning a defendant's good conduct while incarcerated must be viewed in light of the entire record and may not be an accurate indicator of future conduct in a non-custodial setting. *Sanchez,* 117 Idaho at 52, 785 P.2d at 177. Having reviewed the record, we conclude that Gain has failed to demonstrate that the district court abused its discretion when it denied his motion for reduction of his sentences.

### III.

### CONCLUSION

The district court did not err in omitting to instruct the jury that it must unanimously agree on the criminal act that supported the charge in each of the three counts with which Gain was charged. Gain has also failed to demonstrate that the district court violated his right to due process when it denied his request to obtain a second psychosexual evaluation. No abuse of discretion has been shown with respect to the sentences imposed upon Gain and the denial of his Rule 35 motion for reduction of his sentences. Gain's judgment of conviction and sentences, as well as the district court's denial of his Rule 35 motion, are affirmed.

Chief Judge LANSING and Judge GUTIERREZ, concur.