**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36554**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 741 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 10, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DENNIS R. HEILMAN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Carl B. Kerrick, District Judge.

Judgments of conviction and sentences for aggravated assault and rape, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Mark J. Ackley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Dennis R. Heilman appeals from his judgments of conviction and sentences for aggravated assault and rape. We affirm.

**I.**

**FACTS AND PROCEDURE**

Evidence presented at trial established that while Heilman and his wife of fourteen years, P.H., were separated and she had initiated divorce proceedings and obtained a permanent civil protection order against him, Heilman broke into her residence. He was armed with a pistol, proceeded to rip the phone off the wall, asked her "who's holding the cards now, bitch," and with his hand on the gun holster, pushed P.H. and ordered her into the bedroom.

Once they were in the bedroom, Heilman pointed the gun at her, made her lie down on the floor in front of the bed, and stated that if she moved, he would kill her. Heilman left the

bedroom and returned with a beer, at which time he allowed P.H. to get up and sit on the bed. He then attempted to discuss with her the divorce and the restraining order.

After being told that there was no hope of reconciliation, Heilman again pointed the gun at P.H. and forced her to lie down on the bed and threatened to kill her if she moved. He left the bedroom and returned with a box of ammunition, a shotgun, and two bags of marijuana. He loaded the shotgun and then began "rambling" about his life with P.H., while she attempted to "calm" him. During this entire period of time, Heilman continued to drink beer and smoke marijuana. After approximately two hours, Heilman decided that he wanted to cuddle with P.H. and she complied in an effort to keep him calm. P.H. testified that Heilman dozed for the next three hours, with his arm and leg draped over her. She stated that when she would attempt to move, he would grip her tighter.

P.H. awaked Heilman at approximately 6 a.m. and asked him to leave, but he refused. He began to drink alcohol again, and with his hand on the pistol, ordered her to smoke marijuana with him, which she did. Heilman then told P.H. that he wanted to have sex with her, to which she said no. She testified that he then pushed her down and ripped down her sweatpants, at which point he realized she was menstruating and ordered her to perform oral sex. She refused, while he sat on top of her, pinned her arms down, and twisted her nipples causing her to scream. He then covered her mouth and nose, not allowing her to breathe. As she begged him to stop, he eventually got off of her and continued to drink beer.

Heilman next decided that he wanted to engage in anal sex, but he was unsuccessful in penetrating her because she resisted by screaming and physically fighting him off. She testified that he then "flips me over, and then he has an erection and proceeds to rape me." P.H. begged him to stop and when she refused to put her legs up at his request, he twisted her nipples again. After the rape, Heilman ordered P.H. to take a shower and then forced her into a corner of the shower while he did the same.

Heilman's mood swings continued for several more hours. At approximately 9 a.m. P.H. heard banging on the front door, but Heilman would not permit her to answer. He also did not allow her to answer the phone when it rang. Heilman moved P.H. and the weapons to the basement, where there were additional weapons that he had loaded. At approximately 10:30 a.m., P.H. and Heilman heard the police officers enter upstairs, at which point Heilman yelled to the officers to "get the f--- out of my house." The officers complied. Over the next

2

several hours, Heilman moved P.H. back and forth between the basement and the bedroom. At around 4 p.m. the SWAT team entered the house and freed P.H.

Heilman was charged with rape, I.C. § 18-6101(3)[1]; aggravated assault, I.C. § 18-901(b); second degree kidnapping, I.C. §§ 18-4501, 18-4503; and burglary, I.C. § 18-1401.[2] The state also alleged a sentencing enhancement for the use of a deadly weapon in the commission of the crimes. Heilman pleaded not guilty and the case proceeded to a jury trial. The jury convicted Heilman of the rape and aggravated assault charges, as well as the lesser included offenses of false imprisonment and unlawful entry. The district court sentenced him to two terms of twenty years imprisonment with six years determinate on the rape and aggravated assault convictions, to run concurrently. He was also sentenced to concurrent sentences of one year on the false imprisonment conviction and six months on the unlawful entry conviction. Heilman now appeals only from the two felony convictions.

## II.

## ANALYSIS

### A.    Variance

Heilman contends that two fatal variances occurred: the first between the information alleging aggravated assault and the evidence adduced at trial, and the second between the information alleging rape and the jury instructions and evidence adduced at trial.

Initially, Heilman concedes that he did not object to the variances below, but argues that this Court can review these alleged errors for the first time on appeal under the fundamental error doctrine. Recently in *State v. Perry*, ___ Idaho ___, ___ P.3d ___ (Dec. 7, 2010), the Idaho Supreme Court clarified the fundamental error doctrine that applies where an alleged error was not followed by a contemporaneous objection:

> Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the

---

[1]    Due to a 2010 amendment, this section is now codified at 18-6101(4). 2010 Idaho Sess. Laws, ch. 352, § 1.

[2]    Two misdemeanor charges were dismissed prior to trial.

complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Id*. at ___, ___ P.3d at ___. In regard to the harmless error analysis, a defendant bears the burden of proving there is a reasonable possibility that the error affected the outcome of the trial. *Id*. We need not decide whether fundamental error analysis applies here, however, because as we discuss below, we conclude that that there is no error--let alone fundamental error.

A variance may occur where there is a difference between the allegations in the charging instrument and the proof adduced at trial or where there is a disparity between the allegations in the charging instrument and the jury instructions. *State v. Montoya*, 140 Idaho 160, 165, 90 P.3d 910, 915 (Ct. App. 2004). The existence of variance constitutes a due process violation because it deprives a defendant of fair notice of the charges against him. *Id*.

The existence of an impermissible variance is a question of law over which we exercise free review. *State v. Alvarez*, 138 Idaho 747, 750, 69 P.3d 167, 170 (Ct. App. 2003); *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). Our task in resolving the issue presented is two-fold. First, we must determine whether there is a variance between the information used to charge the defendant and either the instructions presented to the jury or the evidence adduced at trial. *See State v. Brazil*, 136 Idaho 327, 329-30, 33 P.3d 218, 220-21 (Ct. App. 2001). Second, if a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *Id*. A determination of whether a variance is fatal depends on whether the basic functions of the pleading requirement have been met. *Id*.; *State v. Windsor*, 110 Idaho 410, 417, 716 P.2d 1182, 1189 (1985). A charging instrument meets the basic functions of the pleading requirement if it fairly informs the defendant of the charges against which he or she must defend and enables him or her to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Bailey*, 444 U.S. 394, 414 (1980); *Brazil*, 136 Idaho at 330, 33 P.3d at 221. A variance is fatal if it amounts to a "constructive amendment." *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent that the defendant is tried for a crime of a greater degree or a different nature. *Id*.; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct. App. 1993). In sum, a variance between a charging document and a jury instruction or the evidence adduced at trial requires reversal only when it deprives the defendant of his substantial rights by violating the defendant's right to fair

4

notice or leaving him or her open to the risk of double jeopardy. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007); *Brazil*, 136 Idaho at 330, 33 P.3d at 221; *Sherrod*, 131 Idaho at 59, 951 P.2d at 1286; *Colwell*, 124 Idaho at 566, 861 P.2d at 1231.

### 1. Aggravated assault

In regard to the aggravated assault charge in particular, Heilman asserts that the allegations contained in the information varied from the evidence adduced at trial which left Heilman open to the risk of double jeopardy and the possibility of producing a less than unanimous verdict.

Count II of the information charged Heilman with one count of aggravated assault as follows:

> That the Defendant, DENNIS R. HEILMAN, on or about the 17th day of December 2005, in the County of Nez Perce, State of Idaho, did intentionally, unlawfully and with apparent ability threaten by word and/or act to do violence upon the person of [P.H.], with a deadly weapon to wit: by forcing her into her bedroom, holding her against her will and threatening to kill her, while in possession of a pistol which created a well-founded fear in [P.H.] that such violence was imminent.

Heilman argues that a variance occurred because while the information charged only one incident of aggravated assault, the prosecution elicited testimony from P.H. that Heilman assaulted her on two separate occasions after forcing her into their bedroom by pointing a gun at her and threatening to kill her if she moved. This, Heilman contends, left him open to the risk of double jeopardy.

The state argues, however, that a variance was not present because while at trial P.H. testified about two separate incidents where Heilman pointed a gun at her and threatened to kill her, in only one of those incidents did she testify that Heilman pointed a gun at her, *forced her into her bedroom*, and threatened to kill her. The phrase "forced her into her bedroom," which was mirrored in the information and jury instruction,[3] is, the state contends, the critical

---

[3] The applicable jury instruction read, in relevant part:

> In order for the Defendant to be guilty of AGGRAVATED ASSAULT, as charged in Count II of the Information, the State must prove each of the following:
> 1. On or about the 17th day of December 2005;

5

distinction between the charged aggravated assault and any uncharged crime. We agree. "[G]iven the nature of the evidence proved at trial, [Heilman] has not shown us why he could not successfully plead double jeopardy against reprosecution *when* and *if* a second Information is filed." *State v. Marks*, 120 Idaho 727, 730, 819 P.2d 581, 584 (Ct. App. 1991) (rejecting the defendant's assertion that he faced the possibility of double jeopardy where there was a one-month variance between the dates of the crime as stated in the information and the proof established at trial).[4] *Accord State v. Jones*, 605 P.2d 202, 206 (Nev. 1980) (deciding that double jeopardy was not an issue because "[t]he indictment and the trial record provide ample protection to [respondent] from the danger of double jeopardy" (citations omitted)).

### 2. Rape

In regard to the rape charge, Heilman asserts that a fatal variance existed between the information alleging rape, the jury instructions, and the evidence adduced at trial. Specifically, he claims both that this variance denied him fair notice of the charge against which he had to defend himself and that the variance has left him open to the risk of double jeopardy.

Count I of the information charged Heilman with rape as follows:

> That the Defendant, DENNIS R. HEILMAN, on or about the 17th day of December 2005, in the County of Nez Perce, State of Idaho, did penetrate the

> 2. in the state of Idaho;
> 3. the Defendant, DENNIS R. HEILMAN, committed an assault upon [P.H.];
> 4. by forcing her into her bedroom, holding her against her will, and threatening to kill her, while in possession of a pistol; and
> 5. the Defendant committed that assault with a deadly weapon or instrument

> . . . . .

---

[4] We also note there has been some question as to the continued viability of the possibility of double jeopardy as an underpinning for concluding that a variance is fatal. *See State v. Montoya*, 140 Idaho 160, 166 n.6, 90 P.3d 910, 916 n.6 (Ct. App. 2004) ("It is has been advanced that protection against future double jeopardy is no longer the concern that it once was, because the availability of trial transcripts allows for a more thorough, subsequent determination of exactly what was before a court in a prior prosecution." (citing *State v. Windsor*, 110 Idaho 410, 418 n.1, 716 P.2d 1182, 1190 n.1 (1985)). *See also* 5 WAYNE R. LAFAVE, CRIMINAL PROCEDURE 332 (3d ed. 2007).

vaginal opening of [P.H.], a female person, with his penis, and where [P.H.] resisted, but her resistance was overcome by force and violence in that the Defendant forced himself on her even when she attempted to physically fight him away.

Jury instruction no. 11 set forth the elements of rape as follows:

In order for the Defendant to be guilty of RAPE, as charged in Count I of the Information, the State must prove each of the following:
1.      On or about the 17th day of December 2005;
2.      in the state of Idaho;
3.      the Defendant, DENNIS R. HEILMAN, caused his penis to penetrate, however slightly, the vaginal opening of [P.H.], a female person; and
4.      [P.H.] resisted but her resistance was overcome by force or violence.
. . . .

Jury instruction no. 13 stated that "[a]lthough [P.H.] must have resisted the act of penetration, the amount of resistance need only be such as would show the victim's lack of consent to the act."

In regard to the alleged variance arising between the information and jury instructions, Heilman argues that a fatal variance exists because the information contains the term "force and violence" and jury instruction no. 11 reads "force or violence" and because the information contains the phrase that P.H. "attempted to physically fight him away," but jury instruction no. 13 stated that P.H. only had to have "resisted." Thus, Heilman contends, he was denied fair notice of the charge against which he had to defend because to find him guilty of rape, the jury did not have to find that P.H. "physically" resisted vaginal penetration by attempting to "fight him away" or that Heilman used force *and* violence to overcome her physical resistance. Instead, Heilman argues that the jury instructions provided that P.H. could have resisted in a manner short of attempting to physically fight Heilman away, and therefore, the jury instructions varied from the information by omitting the essential facts that Heilman used force and violence to overcome P.H.'s attempts to physically resist him.

A review of whether the defendant was deprived of his or her right to fair notice requires the court to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his or her defense. *Brazil*, 136 Idaho at 330, 33 P.3d at 221; *Windsor*, 110 Idaho at 418, 716 P.2d at 1190.

Initially, we conclude that the use of the term "force and violence" in the information and "force or violence" in the jury instruction does not constitute a fatal variance. Even if Heilman

7

could show that this minor discrepancy constituted a variance, it would not be fatal, because the record does not indicate that Heilman was "misled or embarrassed" in the preparation of his defense. As the state points out, Heilman's defense at trial was that P.H. had consented to the sexual intercourse. He did not argue that he was not guilty because he had used force but not violence or, alternatively, violence but not force in obtaining P.H.'s alleged consent, such that use of the phrase "force *or* violence" in the jury instruction would be consequential.

We also conclude that even assuming that the inclusion of language in the information that P.H. attempted to *physically* resist Heilman's attempt to engage in intercourse while the jury instruction referred only to "resistance," constituted a variance, it was not fatal. After a thorough examination of the record in this case, we can find no indication that Heilman was misled, prejudiced or embarrassed at trial by the asserted variance between the information and the jury instructions given by the court. The record does not reflect that Heilman had, or presented before the jury, any theory or defense claiming that while P.H. may have resisted his advances, she had not physically done so and thus he had not overcome her physical resistance by force or violence. His defense was simply that she had not resisted his advances in any manner. *See State v. Hanson*, 130 Idaho 842, 949 P.2d 590 (Ct. App. 1997).

Heilman cites to *Brazil*, 136 Idaho 327, 33 P.3d 218, for the proposition that he was misled by the language in the information, because he was "not on notice of the need to present evidence or argument that P.H.'s resistance and his use of force, other than that alleged in the information, were insufficient to constitute the degree of force and resistance for rape." However, as we indicated above, Heilman's defense was never that P.H.'s degree of resistance was insufficient, but that she did not resist at all. In addition, as the state points out, *Brazil* is distinguishable from the case at hand. There, the defendant was convicted of two counts of aggravated battery, and he appealed, asserting that a fatal variance existed between the charging document and the jury instructions given at trial. This Court agreed that Brazil had not been given fair notice, because the charging document required him only to defend against the claim that he committed an aggravated battery by inflicting gunshot wounds, whereas the jury instruction allowed the jury to convict him of aggravated battery on *entirely different* injuries caused to the victim (e.g., hitting the victim on the head). *Id*. at 331, 33 P.3d at 222. Thus, our conclusion that Brazil was not given fair notice was based on the fact that the jury instruction allowed him to be convicted of an entirely different and uncharged criminal act. Here, there was

8

no such risk--it was clear from the time that Heilman was charged through trial that the only basis for the rape conviction was the state's allegation that Heilman vaginally raped P.H. and therefore that he needed to defend himself against that charge, which he did by arguing that P.H. had not provided *any* resistance to his advances.[5]

In regard to the alleged variance between the information and the evidence adduced at trial, Heilman contends that while the prosecution charged Heilman with only one count of rape, it elicited evidence at trial that "multiple offenses, of the same type, were committed during a course of conduct--thus opening him to the risk of double jeopardy." Specifically, he contends that the record is insufficient for him to "prevent a subsequent prosecution for battery with the intent to rape because it is impossible to determine whether the jury relied upon evidence involving battery with the intent to commit rape (oral penetration), or evidence involving battery with the intent to commit rape (anal penetration), or some combination of both in finding [Heilman] guilty of rape (vaginal penetration)."

Heilman's contention in this regard fails as it is clear that the state did not elicit evidence of "multiple offense, of the same type" that would put Heilman at the risk of double jeopardy. In regard to the rape charge, Heilman was charged only with vaginally raping P.H.--which was specifically indicated in both the information and the jury instructions. The state then elicited evidence that in addition to the vaginal rape, Heilman had also attempted to orally rape and anally rape P.H. Heilman now contends that it is "impossible" to tell whether the jury relied on the vaginal rape evidence or the attempted oral and anal rape evidence to convict him of vaginal

---

[5] One commentator notes the effect of failing to object at trial when determining whether the defendant may have been misled or embarrassed in the preparation or presentation of his defense:

> A failure to object to the variance at trial generally is viewed as a waiver of a claim of prejudice, and an eleventh hour objection is taken as strong evidence belying any such claim. If the defendant was previously aware of the prosecution's proof as a result of pretrial discovery or a preliminary hearing, that factor also will weigh against a finding of prejudice. The court also will look to the relationship of the variance to the defense presented by the defendant. Thus, variances as to factors that ordinarily are not part of the material elements of the crime (e.g., time and place) are viewed as unlikely to prejudice a defendant whose defense centered on challenging the government's proof as to one of those material elements.

5 WAYNE R. LAFAVE, CRIMINAL PROCEDURE 331 (3d ed. 2007) (footnotes omitted).

rape. This is not tenable--the jury instructions specifically stated that to find Heilman guilty of rape, the jury had to conclude that he had penetrated the "vaginal opening" of P.H. and thus, applying the presumption that the jury followed the district court's instructions, *State v. Laymon*, 140 Idaho 768, 771, 101 P.3d 712, 715 (Ct. App. 2004), we must conclude that the jury convicted Heilman of rape based on the evidence of vaginal rape elicited at trial. There is no reason to think otherwise. Thus, Heilman was not placed at risk of double jeopardy by the alleged variance between the information and the evidence adduced at trial because he was never placed "in jeopardy" for the attempted oral and anal rapes.

**B.     Unanimity Instructions**

Heilman contends that the district court erred as to both the aggravated assault and rape charges by failing to instruct the jury that it must agree unanimously upon a single act that formed the basis of the conviction. He contends that such instructions were necessary because, as to both charges, the state presented evidence of more than one possible act that could form the basis of the respective convictions. The state contends that we cannot review this issue on appeal, because Heilman did not request the instructions below and, in the alternative, the record does not support his contention that the state presented evidence of multiple separate and distinct acts that could have, by themselves, been the basis for Heilman's convictions for the two charges at issue.

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992); *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

In a criminal case, the district court has a duty to give the jury instructions on all matters of law necessary for their information. I.C. § 19-2132; *Gain*, 140 Idaho at 172, 90 P.3d at 922. The trial court thus must give instructions on rules of law material to the determination of the defendant's guilt or innocence. *Id*. Such obligatory instructions include those necessary to correctly inform the jury with respect to the nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted. *Id*. In the ordinary case, a general unanimity instruction suffices to instruct the jury that they must be unanimous on

10

whatever specifications form the basis of the guilty verdict. *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir. 1999); *Gain*, 140 Idaho at 172, 90 P.3d at 922. A specific unanimity instruction is required only when it appears that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts. *Gain*, 140 Idaho at 172, 90 P.3d at 922. Where the evidence indicates that separate and distinct incidents of criminal conduct could provide a basis for a juror's finding of guilt on the criminal charge in any count, the trial court must instruct the jury that it must unanimously agree on the specific incident constituting the offense in each count, regardless of whether the defendant requests such an instruction. *Id.* at 172-73, 90 P.3d at 922-23.

It is undisputed that Heilman did not request the instructions below, and thus to be reviewable on appeal, he must show that the court's failure to give the jury unanimity instructions was fundamental error. However, we conclude that failure to give the instructions was not erroneous on the basis that the state did not present evidence of separate and distinct incidents of criminal conduct that could, on their own, provide the basis for a juror's finding of guilt on the criminal charges at issue.

In regard to the aggravated assault charge, Heilman was charged with one count based on the allegation that he forced P.H. into her bedroom, held her against her will, and threatened to kill her while in possession of a gun. While P.H. testified both about this incident and another, uncharged, assault that also occurred in the bedroom, the other uncharged act did not include Heilman forcing her into the bedroom and thus, as the state points out, "did not have an evidentiary basis for meeting the elements of the crime with which Heilman was charged."

Likewise, as we discussed above with regard to the rape charge, the act that was the basis of the charge was that Heilman had vaginally raped P.H. by overcoming her resistance with force or violence. The additional uncharged acts that P.H. also testified to could not have formed the basis for the rape conviction because she specifically stated they consisted of Heilman attempting to rape her orally and anally--and thus could not form the basis of a conviction for vaginal rape. In addition, her testimony was clear that the uncharged acts were mere attempts, while the charged act was completed (a fact which Heilman corroborated in his testimony).

Thus, the district court was not required to give unanimity instructions with regard to these charges because there was not a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts.

11

## C.   Sufficiency of the Evidence

Heilman contends there was insufficient evidence to support a verdict finding him guilty of rape on the theory that P.H. physically resisted him, but that he overcame her resistance by the use of force and violence.

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The evidence at trial established that after Heilman forced P.H. into her bedroom at gunpoint, he told her that he wanted to have sex with her, to which she said no. He then pushed her down on the bed and ripped down her sweatpants. Seeing that she was bleeding heavily, he tried to force her to perform oral sex by requesting that she do so, pushing her down, straddling her, placing his penis in front of her face, lifting her shirt and twisting her nipples, and putting his hand over her mouth and nose while P.H. was screaming and attempting to push him off of her. When he did not succeed in having P.H. perform oral sex, he got off of her and sat down on the bed. He then requested that she engage in anal sex, which she verbally and physically refused by physically not allowing his penis to penetrate her buttocks. P.H. testified as follows regarding what occurred immediately after his unsuccessful attempt to anally rape her:

> [Prosecutor]:   He's unsuccessful in the anal intercourse. What happens next?
> [P.H.]:          He flips me over, and then he has an erection and proceeds to rape me.
> Q.               Pull down your pants?
> A.               Well, they were down on my ankles when he was trying the anal.
> Q.               Did they rip when he was--when he pulled them down at all?
> A.               No.
> Q.               Why do you think they didn't rip? Was it forceful?
> A.               Because they're big granny panties.

12

Q.          Okay. So, the pants are down below your ankles. And is he successful in entering you vaginally?

A.          Yes.

Q.          What are you doing at this time?

A.          I'm asking him, I'm begging him to have him stop. And he wanted me to proceed to put my legs up so he could enjoy it more.

Q.          And did you do that?

A.          No.

Q.          Okay. What did he do when you refused to comply with that?

A.          He would twist on my nipples really hard.

Q.          And while he's--while he's raping you, where is the gun?

A.          On the bed.

Q.          Right next to him again?

A.          Yes.

When Heilman took the stand, the following exchange occurred with the prosecutor:

[Prosecutor]: She didn't really want to have sex with you, did she?

[Heilman]: No.

Q.          So, you basically forced her to have sex with you?

A.          No.

Q.          She didn't want to have sex with you, but you had sex with her?

A.          Yes.

Viewing the evidence in the light most favorable to the verdict, we conclude there was sufficient evidence for a reasonable jury to find that P.H. resisted Heilman's attempt to engage in vaginal intercourse with her. As stated in the comment to Idaho Criminal Jury Instruction 904, entitled "Resistance to Rape," which was given to the jury in this case:

In Idaho, a rape victim is not required to resist to the utmost of the victim's ability. *State v. Neil*, 13 Idaho 539, 90 P. 860 (1907). The importance of resistance by the victim is simply to show two elements of the crime--the assailant's intent to use force in order to have sexual intercourse and the victim's non-consent. *State v. Andreason*, 44 Idaho 396, 357 P. 370 (1927). *See also, State v. Fowler*, 13 Idaho 317, 89 P. 757 (1907); *State v. Lewis*, 96 Idaho 743, 536 P.2d 738 (1975); *State v. Robran*, 119 Idaho 285, 805 P.2d 491 (Ct. App. 1991); *State v. Gossett*, 119 Idaho 581, 808 P.2d 1326 (Ct. App. 1991).

P.H.'s resistance was manifested by her verbal insistence that she did not want to have sex with Heilman--in whatever manner he demanded--and once the vaginal rape began, the fact that she was "begging" him to stop and her refusal that she put her legs up at his request. In this instance, there was sufficient evidence from which the jury could conclude that P.H. did not consent to the vaginal intercourse, such that she "resisted" within the meaning of the statute.

13

We also conclude that there was sufficient evidence for the jury to conclude that Heilman overcame P.H.'s resistance (i.e., lack of consent) by force or violence. Specifically, P.H. testified that Heilman accomplished the vaginal intercourse by physically flipping her over on the bed and by twisting her nipples during the act. On this basis, we reject Heilman's assertion on appeal that there was insufficient evidence for the jury to convict him of rape.

## C.     Sentence Review

Heilman contends that given any view of the facts his unified sentence of twenty years imprisonment, with six years determinate, is excessively harsh. Specifically, he asserts that the district court failed to adequately consider applicable mitigating circumstances, because the court applied an overly restrictive definition of "mitigation" and that the court erroneously considered evidence in aggravation of his sentence that had been rejected by the jury or was not otherwise supported by sufficient facts.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ. To show an abuse of discretion, the defendant must show that the sentence, in light of the governing criteria, is excessive under any reasonable view of the facts. *State v. Stevens*, 146 Idaho 139, 148-49, 191 P.3d 217, 226-27 (2008). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

14

Heilman's first contention is that the district court did not properly take into account certain mitigating circumstances, namely his alcoholism, his marital problems and their effect on his relationship with his children, his lack of a felony criminal record, his service in the national guard, and "his good character as reflected in his love for his children and the various correspondence between [Heilman] and his step-father." On appeal, Heilman points to the Idaho Supreme Court's definition of "mitigating circumstances" as those that "do not constitute a justification or excuse of the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability." *State v. Osborn*, 102 Idaho 405, 415, 631 P.2d 187, 197 (1981). The district court, he contends, "failed to grasp the mitigating value of the extenuating circumstances surrounding Dennis's criminal conduct," as evidenced by the following statements:

> [T]he fact that you were in a divorce and the fact that you've had a lifelong problem with alcohol *does not excuse your conduct. It does not excuse the conduct.* You willingly got yourself intoxicated, as you have on so many occasions over the course of your life and, perhaps, placed yourself in this position where somehow or other you were able to carry out this offense.
> . . . .
> But there's *no justification for the way you handled that*. There are all kinds of other ways to do that and you picked the absolute worst.
> . . . .
> I know that you feel badly about this. I know that your apology here in court is heartfelt. But to a degree, I think *you have minimized your responsibility*. As I read through the presentence report and the things that you have said, I don't think that you fully accept responsibility for this.

(emphasis added).

These comments, Heilman argues on appeal, show that the district court "equated mitigating circumstances with only those which would excuse or justify criminal conduct, and disparaged the presentation of valid mitigation as indicative of a failure by Dennis to take full responsibility of his actions." We disagree that these statements indicated a misunderstanding by the district court as to the applicability of mitigating circumstances in fashioning a sentence. Rather, an examination of the court's statements as a whole indicates that the court did take into account the circumstances asserted by Heilman as mitigating when fashioning the sentence.[6]

---

[6]    The court specifically articulated its recognition that divorce can be a "high-pressure situation" and also made reference to Heilman's "life-long struggle with alcohol."

15

The court's reference to the fact that these circumstances did not excuse Heilman's conduct is merely a recognition of the nature of mitigating circumstances as set forth in the Idaho Supreme Court's definition cited by Heilman.

Nor do we agree that because the court indicated its belief that Heilman had not taken full responsibility for his actions, that the court improperly "disparaged" the presentation of valid mitigating circumstances. As we stated above, the record is clear that the district court took the mitigating circumstances advanced by Heilman into consideration--a fact which is not changed where the court also assessed Heilman's acceptance of responsibility and recognition of the seriousness of the crime, as is within the court's discretion.

Heilman also argues that the district court abused its discretion in imposing the sentence, because it punished him based on the court's belief that he had intended to harm P.H. when he entered the home--a fact which Heilman contends was rejected by the jury because it acquitted him of burglary. An examination of the statement in the context of the district court's discussion of Heilman's sentence indicates that the court did not rely on a belief that Heilman intended to harm P.H. at the moment he entered her home. Rather, the court relied on the entirety of his conduct throughout the episode. Specifically, the court stated:

> I know that you have said, and [your defense attorney] said on your behalf, that you didn't intend to harm Mrs. Heilman; and that, really, the only person that you thought about harming was yourself. But, Mr. Heilman, if you are--if you, in fact, felt that way and your intent was not to harm anyone but yourself, you were the only one who knew that. You were the only one who knew that. Everybody else presented with this situation acted on the idea that you were going to do a lot more than that. Everyone else was acting under the idea that you were at least in there on a murder-suicide effort.
> Mrs. Heilman certainly convincingly testified that she was scared for her life. . . . The SWAT team officers that went into your house were scared of the potential that they would be shot. . . .
> So, Mr. Heilman, if you indicate that you didn't intend to harm anyone, all other indications are that you did because of the way you presented this thing. Violation of the protection order, breaking into the home with a baseball bat, ripping the telephone off the wall so no contact could be made, making threats to kill your wife, your use of firearms, it certainly appears that you--you intended to do a lot more than simply harm yourself.
> And I say that thinking of some of the background information. I know that Ruby Smith testified that you had made a statement you thought about killing your wife and yourself on a previous occasion leading up to this incident.

Thus, an examination of the record shows that the court did not rely on an improper basis in sentencing Heilman, and he has failed to show that it was excessively harsh.

## III.

## CONCLUSION

Heilman has not demonstrated that there was a fatal variance in regard to either the aggravated assault charge or the rape charge. Nor has he demonstrated that the district court erred in not giving the jury a unanimity instruction. We also conclude there was sufficient evidence presented upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of rape. Finally, we conclude that Heilman's sentence was not an abuse of discretion. Accordingly, Heilman's judgments of conviction and sentences for aggravated assault and rape are affirmed.

Chief Judge LANSING and Judge GRATTON, CONCUR.