**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40868**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 752 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 8, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TIMOTHY THYS PRESSLEY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Judgment of conviction for aggravated assault, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Timothy Thys Pressley appeals from his judgment of conviction for aggravated assault, Idaho Code §§ 18-901, 18-905. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The State charged Pressley with aggravated assault for releasing a pit bull at Jeffrey Brekke, and misdemeanor battery for punching Brekke.[1]

Brekke testified that he was a general manager at a truck stop located in Boise. He also testified that he had been formerly trained to handle dogs at his previous job as a manager for a pet supply store. He further testified to the following: Pressley and two other men were sitting together on the grounds of the truck stop. The travelers had three dogs with them. Based on

_____

[1] Pressley does not appeal from his conviction of misdemeanor battery, I.C. § 18-903.

1

reports of an altercation, Brekke approached the group and told them if there were any further problems they would need to leave. The travelers informed him that they were hitchhiking through the area and would be leaving within the next ten to fifteen minutes. Brekke returned to the store. Roughly fifty minutes later, a customer informed Brekke that someone was talking loudly and drinking on the premises. Brekke then went back to where Pressley and his companions were sitting. He observed a whiskey bottle and told the trio that they needed to leave. The travelers became boisterous and belligerent. Two of the dogs began to bark and circle around Brekke. Based on his previous training, Brekke was not concerned with these two dogs because their demeanor suggested they were not a threat. Nevertheless, Brekke asked the travelers to control their animals. While the other dogs continued to circle Brekke, the pit bull, which weighed an estimated thirty to forty pounds, began to strain against the leash held by Pressley and became more vocal. Pressley then raised his hand and let go of the leash. The pit bull charged Brekke and began to lunge and jump while snapping its jaws. Brekke testified that the dog bit him several times and that he felt in danger of physical harm. Brekke subdued the pit bull by grabbing the jowls of the dog and bringing her to the ground. While the dog attacked Brekke, Pressley made no effort to stop the attack or control the dog. Once Brekke had the dog restrained on the ground, Pressley ran at Brekke and punched him in the face. Brekke was ultimately able to separate himself from the dog and the police were called.

An individual who had been pumping gas nearby when the attack occurred, testified that he heard a commotion, looked up, and saw the dog charge Brekke. The witness also testified that Pressley made no effort to call off the dog or restrain the animal. The witness confirmed that while Brekke was restraining the pit bull, Pressley charged and punched Brekke in the face.

The responding officer testified that Pressley said he punched Brekke because he thought Brekke was harming his dog. On cross-examination, the officer acknowledged that Pressley did not indicate he released the leash. The jury also heard the audio recording of Pressley and the officer's conversation. In the recording, Pressley admitted to drinking, said he punched Brekke because he was kneeing and kicking the dog, and that Brekke pulled out a knife and threatened the dog.[2] Pressley said the dog was on a leash but was not under the control of his group. Pressley told the officer that the dog is just a puppy and that it was not attempting to bite Brekke.

---

[2]    The jury also heard a 911 call made after the dog attack in which both Pressley and Brekke can be heard yelling.

The officer responded that when he arrived the dog attempted to bite him, and had the dog not been leashed and subdued, he would have shot the dog. Pressley also explained in the recording that they obtained the dog while in California from someone who could not keep the dog under control.

Pressley testified as the only defense witness. Pressley asserted that he did not own the dog and that he was not holding the pit bull when Brekke approached the group. Thus, the pit bull ran up to Brekke unhindered and Pressley never released the dog's leash. He admitted punching Brekke, but explained he thought Brekke was harming the dog. On cross-examination, Pressley acknowledged that he did not call the dog back or attempt to grab the leash after the dog ran towards Brekke. On re-direct, Pressley indicated the dog would not have complied with any verbal commands even if they had been given. The jury convicted Pressley for both aggravated assault and misdemeanor battery. Pressley timely appeals.

## II.

## ANALYSIS

Pressley argues, for the first time on appeal, that he was denied his right to due process because of a fatal variance between the charging document and the jury instructions. Specifically, he complains that the information alleged assault by threat of violence through release of the dog. However, the jury instructions and the arguments of the State provided for a finding of assault by threat of violence or by attempted harm through release of the dog.

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). A variance may occur where there is a difference between the allegations in the charging instrument and the proof adduced at trial or where there is a disparity between the allegations in the charging instrument and the jury instructions. *State v. Montoya*, 140 Idaho 160, 165, 90 P.3d 910, 915 (Ct. App. 2004). If it is established that a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). A variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment, as opposed to a mere variance, occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *Id.*; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d

3

1225, 1231 (Ct. App. 1993). In other words, a variance between a charging document and a jury instruction requires reversal only when it deprives the defendant of fair notice of the charge against which he or she must defend, or leaves him or her open to the risk of double jeopardy. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007). The notice element requires courts to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his defense. *State v. Windsor*, 110 Idaho 410, 418, 716 P.2d 1182, 1190 (1985).

Where, as here, the defendant did not object to the alleged error below to obtain relief on appeal for fundamental error, the following three prongs must be met: (1) the defendant must demonstrate one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate there is a reasonable possibility that the error affected the outcome of the trial. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

The information accused Pressley of aggravated assault, specifically citing I.C. §§ 18-901(b), 18-905(b), and described the charge as follows:

> That the Defendant, TIMOTHY THYS PRESSLEY, on or about the 6th day of September, 2012, in the County of Ada, State of Idaho, did intentionally, unlawfully and with apparent ability threaten by word and/or act to do violence upon the person of Jeffrey Brekke, by a means likely to produce great bodily harm, to-wit: by releasing a pit bull breed dog at Jeffrey Brekke, which created a well-founded fear in Jeffrey Brekke that such violence was imminent.

Idaho Code § 18-901(b) defines an assault as "[a]n intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Idaho Code § 18-901(a) provides for an alternative definition of assault: "An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another." Thus, an individual can commit an assault through either an unlawful threat or an unlawful attempt.

After the evidence was presented, the district court instructed the jury on the definition of the crime of assault as follows:

> An "assault" is committed when a person:
> (1) unlawfully attempts, with apparent ability, to commit a violent injury on the person of another; or

4

(2) intentionally and unlawfully threatens by word or act to do violence to the person of another, with an apparent ability to do so, and does some act which creates a well-founded fear in the other person that such violence is imminent.

In addition, the district court, in the elements instruction, required that the jury find that the assault occurred "by releasing a pit bull breed dog at Jeffrey Brekke."

Pressley argues there is a variance between the information and the instructions because the jury instructions required the jury to find him guilty if they found either that he threatened harm, as charged in the information, or if he attempted to harm Brekke. The State argues that no variance occurred in this case because the factual basis for the charge was the same from the beginning to end. That is, that Pressley assaulted Brekke by releasing the pit bull. The State asserts that there is no variance because both the information and jury instructions required the assault to be by means of releasing the pit bull. As set forth below, however, to the extent a variance exists in this case, it was not fatal and did not prejudice Pressley.

Pressley argues that the variance is fatal because the prosecutor raised the attempt theory in opening argument, presented evidence tending to show an attempt to harm occurred, and argued in closing argument that the jury could convict him under either theory of assault. Pressley further argues that the prosecutor's argument, the testimony presented, and the jury instructions, allowed the jury to convict him of having committed the aggravated assault by attempting to harm Brekke, which was an offense Pressley was not charged with.[3] However, Pressley has not shown how any variance caused him to be tried for a crime of greater degree or of different nature. *See Jones*, 140 Idaho at 49, 89 P.3d at 889. Moreover, Pressley has not shown how he was misled or embarrassed in presenting his defense. *See Windsor*, 110 Idaho at 418, 716 P.2d at 1190.

Pressley did not lack notice that would have hampered his defense. Pressley's defense focused on whether the dog was intentionally released. Pressley testified that he did not release the dog because he never had the leash in his hand, the dog was not a pit bull, it was not his dog so he did not bear the responsibility for it, and releasing the dog would not be in his character.

---

[3] Pressley does not argue the variance leaves him open to double jeopardy, thus we do not inquire into whether the variance is fatal in this regard. *See State v. Hoffman*, 137 Idaho 897, 901, 55 P.3d 890, 894 (Ct. App. 2002) ("Here, we are informed of no risk of double jeopardy, and therefore we examine whether Hoffman was deprived of fair notice of the elements of the offenses against which he needed to defend.").

5

Pressley's defense was not hampered by any variance because under either theory of assault, Pressley's defense would be the same--Pressley did not intentionally release the dog. The prosecutor presented the attempt theory in opening argument, continued to allude to it through evidence suggesting the dog was used as a weapon, and expressly told the jury that assault can stem from a threat or an attempt, and that in this case, Pressley's conduct constituted both a threat and an assault. Additionally, the conduct necessary to prove either theory of assault in this case stemmed from the same conduct, which was that Pressley released a pit bull at Brekke. Further, in response to the evidence and argument, Pressley's attorney, knowing the State's alternative theories of the case, focused the defense on whether Pressley intentionally released the leash. We hold that any variance between the information and jury instructions was a mere variance, which did not mislead or embarrass Pressley in defense of the charge of aggravated assault. Thus, Pressley has failed to establish that one of his constitutional rights was violated.

## III.

## CONCLUSION

Any variance between the information and jury instructions is not fatal; therefore, Pressley has failed to establish fundamental error. Pressley's judgment of conviction for aggravated assault and misdemeanor battery is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**